SHANNON, Judge.
The appellant, Central Theatres, Inc., brings this interlocutory appeal to review the action of the chancellor below in issuing a temporary restraining order without requiring appellees to post a bond. The ap-pellees were plaintiffs in the proceedings below.
On November 13, 1963, the complaint was filed by the appellees against the appellant, charging, among other things, that the appellant owned and operated a certain business in the City of Sarasota known as the Ritz Theatre, and that on November 13, 1963, the defendant began showing a motion picture entitled “Blood Feast.” The complaint charged that in this picture there are scenes depicting sadistic and inhuman behavior, and plaintiffs set out briefly three such scenes from the movie as follows:
“(a) A fiend who pulls the heart out of a woman which shows the opening of the body with a knife and thereafter the removal of the heart, with the ensuing profuse bleeding that would naturally occur.
“(b) The pulling and cutting out of the tongue of a woman, with the ensuing profuse bleeding.
“(c) The dismemberment of a woman in a bathtub whereby her arms and legs are cut off, with the ensuing profuse bleeding.”
The complaint then states that the motion picture presents to the public, as a public offering, sadism at its worst, to the detriment of the morals, welfare and well-being of the relators herein and the public as a whole in Sarasota County. The complaint further alleges that this motion picture tends to annoy the community, injure the health of the community, and that it is manifestly injurious to the morals and manners of the people, as well as their public health and safety. In conclusion, the complaint alleges that this movie is a public nuisance in accordance with Chapter 823, Fla.Stat., F.S.A., and subject to abatement under Chapter 64 of the statutes, F.S.A. Pursuant to this complaint, and without notice to the defendant, the court issued a temporary restraining order, without bond. In the restraining order the chancellor set the cause to be heard on November IS, 1963, at 9:00 A.M. A subpoena duces tecum has been issued at the request of the plaintiffs, and was served upon the resident manager of the defendant corporation, commanding him to bring into court the film of the picture, “Blood Feast.”
At the hearing on November IS the plaintiffs, through their attorney, stated that they were proceeding under Sec. 64.11, Fla.Stat., F.S.A. The attorney for the defendant requested the chancellor to set an adequate bond to indemnify the defendant for any harm done as a result of this particular injunction in the event that the defendant prevailed. The chancellor refused to do this, holding that he would simply continue the temporary restraining order until further hearing. At that time counsel for the defense objected as follows:
“If I may make this observation? •The effect of what counsel for the Plaintiffs is contending under a section of the Florida statute, which we feel does not apply to this situation, is to set any private citizen up as a board of censorship by virtue of the order of the Court. We are only going to operate for 7 days. This order precludes the showing of this picture and is an invasion of the rights of these people.”
The chancellor replied:
“I recognize that. I think as far as this particular show is concerned we will have to figure that this is in the event of a wrong decision and we will figure this is something that you are sacrificing by virtue of this case coming up in Court.
“Rather than enter a final injunction now and thereby establish a precedent, *560 I think we should say this is the appropriate remedy and the appropriate way of disposing of a question of this kind.”
It might also be noted that an affidavit has been filed in this court by the assistant secretary of the defendant corporation. There is no evidence that it was properly submitted in the lower court, yet it nevertheless states various matters of interest which we note in passing. Said affidavit would show that “Blood Feast” is a motion picture which is distributed by Dominant Pictures of Charlotte, North Carolina, and that said distributor may reasonably expect $2,000.00 a week as percentage film rental. Damages to the defendant, if the injunction is granted without bond, may be considerably in excess of this amount. The affidavit further shows that this motion picture has been shown at various places throughout Florida, including Miami, Tampa, Jacksonville, Ocala and St. Augustine. We also take judicial notice of the fact that even as this opinion is being written, said motion picture is being shown at a local drive-in theatre. But even apart from this affidavit, it is readily seen that the defendant, if this restraining order is granted without bond, will suffer a large amount of damages. In addition to the restraining order, the film is tied up by the subpoena duces tecum.
In reviewing the applicable law involved we first wish to point out certain excerpts from Chapter 64, Fla.Stat, F.S.A. Sec. 64.-11 reads as follows:
“Whenever any nuisance as defined in § 823.OS is kept, maintained or exists, the state’s attorney, county solicitor, county prosecutor, or any citizen of the county through any attorney he may select, may maintain his action by complaint in the proper court in the name of the state upon the relation of such attorneys or citizen to enjoin said nuisance, the person, or persons conducting or maintaining the same and the owner or agent of the building or ground upon which said nuisance exists.”
Sec. 64.12 states, in part:
“In such action the court, judge or court commissioner before whom the complaint may be brought may upon proper proof being made allow a temporary writ of injunction without bond. * * * At least three days notice in writing shall be given defendant or defendants of the time and place of application for said temporary injunction.”
Also, Sec. 64.03 reads as follows:
“In all suits in equity where summary process by injunction or otherwise shall be prayed, and the complaint justifies such process, and affidavit shall be made of the truth of the statements of the complaint, and that the complainant is unable to give bond of indemnity or other security, the chancellor shall receive from both parties evidence of the truth or falsity of the statements of the complaint and of the accompanying affidavit, and if they shall appear to be true, shall grant such process without requiring such security.”
The appellees also cite Chapter 823, Fla. Stat, F.S.A., and in particular, Sec. 823.05, which statute defines certain places as nuisances, but without mentioning motion pictures or theatres where they are shown, other than stating:
“Whoever shall erect, establish, continue, or maintain, own or lease any building, booth, tent or place which tends to annoy the community or injure the health of the community, or become manifestly injurious to the morals or manners of the people as described in § 823.01, or shall be frequented by the class of persons mentioned in § 856.02, or any house or place of prostitution, assignation, lewdness or place or building where games of chance are *561 engaged in violation of law or anyplace where any law of the state is violated, shall he deemed guilty of maintaining a nuisance, and the building, erection, place, tent or booth and the furniture, fixtures and contents are declared a nuisance. All such places or persons shall be abated or enjoined as provided in §§ 64.11-64.15.”
These were the statutes under which the appellees herein obtained the restraining order without bond. No showing was made in evidence that any of the complainants below were without facilities to give a bond, and it is again noted that no notice was given the defendant of the application for the restraining order.
Though we certainly do not endorse movies containing scenes as depicted above, it must nevertheless be kept in mind that we are not in a position at this stage in the proceedings to rule on the merits of the case. Our question is simply whether or not such a movie may be summarily enjoined without even the necessity of a bond. And in answering this question we must take into consideration various basic principles of law and justice.
The motion picture industry in the United States has become a tremendous force in the promotion of entertainment and education of our people — so much so in fact that the various States of this Union have enacted laws seeking to protect the public as well as to supervise the maintenance and control of the industry in order to limit objectionable effects. Among the laws which the various States have enacted is the sort concerned with the censorship of the various motion pictures shown. In Florida such law is found in Chapter 521 of our statutes, F.S.A., which has the general heading, “Exhibition of Motion Pictures.” In Sec. 521.-02 it is provided that it is unlawful for any person to display any motion picture that has not first been “reviewed and approved by the national board of review of motion pictures, inc., its appointees or successors, or the film estimate board of national organizations or licensed by the state department of education of the state of New York.” In the event that such picture is shown without compliance with Sec. 521.02, it may be restrained by the state attorney, county solicitor or county prosecuting attorney in the name of the State upon the relation of such state attorney, county solicitor or county prosecuting attorney. Under Sec. 521.-021 it is provided, among other things:
“In any action brought as provided in this section, no bond or undertaking shall be required of the state or the state attorney or county solicitor or county prosecuting attorney before the issuance of a restraining order provided for by subsection (2) of this section, * * * »
The appellant had the license provided for under this Chapter. It is noted that this Chapter makes no provision for any private citizen of the State of Florida to file a complaint against an exhibitor of a motion picture by reason of the fact that such exhibitor does not have the license described. Hence, we come back to Chapter 64 for the appellees’ right to file a suit such as the present one. There is no attack made upon the bill of complaint as filed in the instant suit, thus we have only the question of whether or not the chancellor in his discretion was correct in denying the security petitioned for by the appellant. It is seen in Sec. 64.12, supra, that the chancellor does have a certain amount of discretion. However, in view of the fact that the appellant in the instant case would assuredly suffer damages in the event that the restraining order were ultimately dissolved, and in view of the chancellor’s statement that “ * * * [W] e will figure this is something that you are sacrificing by virtue of this case coming up in Court,” it is evident to us that the chancellor must have misconstrued the nature of this suit and the potential damages that the appellant would suffer if ultimately the restraining order were dissolved. The appellant did not bring this suit — it was brought into court by the appellees.
*562 In Dade Enterprises, Inc. v. Wometco Theatres, Inc., 1935, 119 Fla. 70, 160 So. 209, it is said:
“It is a rule of general application in injunction cases that an injunction should not he granted where there is substantial dispute as to the legal rights involved and the right of complainant is doubtful, or is not clear, or is questioned on every ground on which he puts it, not only by the answer of the defendant, but by the proofs in the cause. This is especially true in a case like the one now before us, where a decision on the merits of the present controversy would necessarily affect valuable rights of the principal parties to the basic contract, neither of which party is before the court, but whose contract and the interpretation that it should have are wholly determinative of whatever right complainant may be capable of asserting in the premises. (Citations).”
In practically all cases where a restraining order is granted, and particularly where granted without notice, a bond is required, although this is usually a matter for the discretion of the chancellor. In the case of Belle’s Department Store, Miami, Inc. v. Scherman, Fla.App.1960, 117 So.2d 845, the Third District Court of Appeal, through Judge Carroll, laid down certain ground rules as to the limits of this discretion:
“A party seeking and obtaining a restraining order or other form of injunction, unless he or she makes a sufficient showing of poverty or inability to make bond, must, as a condition of the effectiveness of such injunctive order, be required to file a bond, with good and sufficient surety, to be approved by the court or clerk of the court, payable to the opposing party or parties, in the principal amount fixed by the court, and conditioned as required by law. Sections 64.02, 64.03, Fla.Stat., F.S.A.; Dixie Music Co. v. Pike, 135 Fla. 671, 185 So. 441; Lewis v. Lewis, Fla.1953, 66 So.2d 260; International Brotherhood of Teamsters, etc., v. Miami Retail Grocers, Fla.1954, 76 So.2d 491. See 17 Fla.Jur., Injunctions, §§ 70, 71.
* * V * * *
“When a person’s conduct is restrained, or his business or property handed over to a receiver, the protection which such bonds afford should not be lightly dispensed with, but should be zealously guarded and uniformly enforced by the courts. Such orders for injunction and receivership may have serious and far reaching effects on a person’s liberty of action and his property or business. The party who initiates such drastic writs and processes should be made to place himself in a position of accountability, at least to the extent that the law specifies, to recompense his adversary for losses sustained, if it should be concluded ultimately that his action which brought it about was irregularly or improvidently invoked, or his cause without merit.”
The above discussion is particularly in reference to Secs. 64.02 and 64.03, which sections are concerned with injunctions in general. Nevertheless, the language of Sec. 64.12, to wit, that the court “ * * * may upon proper proof being made allow a temporary writ of injunction without bond * * * ” is equally susceptible to the above-quoted discussion. In other words, it is usually within the discretion of the chancellor, in an action to abate a nuisance pursuant to Sec. 64.11, Fla.Stat, F.S.A., to require or not to require a bond. Therefore, the ultimate question is whether there has been an abuse of this discretion by the chancellor below.
Taking heed to the language in the Belk’s case, and in view of the certain and extensive damages that the appellant will incur in the event that the restraining order is ultimately dissolved, and also taking into *563 consideration the chancellor’s apparent misapprehension as to the distinct possibility of such incurrence, we feel that the chancellor has abused his discretion in denying the appellant’s petition for setting a proper bond.
Reversed.
WHITE, J., concurs specially.
SMITH, C. J., dissents with opinion.