369 So.2d 398 (1979)
FLORIDA HIGH SCHOOL ACTIVITIES ASSOCIATION, INC., et al., Appellants,
v.
Christopher J. BRADSHAW et al., Appellees.
No. 77-1894.
District Court of Appeal of Florida, Second District.
March 30, 1979.
*399 Chris W. Altenbernd and W. Donald Cox of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for appellants.
Douglas J. Loeffler of Fox, George, Loeffler & Downey, Clearwater, for appellees.
DANAHY, Judge.
In this case a high school's football program ran afoul of the rules which govern eligibility to participate and impose sanctions for violations, no matter how innocent. For an inadvertent violation, the school's football team was threatened with losing its chance to compete for a state championship. The trial judge granted an injunction which avoided that result. On the facts presented in this case, we hold that the injunction should not have been granted.
The facts are essentially undisputed. Plaintiff/appellee Christopher J. Bradshaw (Christopher) was a student at Largo Senior High School (Largo). He participated as a varsity member of the football team in two games between Largo and other high schools in the fall of 1977, both won by Largo, at a time when he was ineligible to do so under the rules of defendant/appellant Florida High School Activities Association, Inc. (the Association). Accordingly, the Association declared that Largo must forfeit those two football games. This suit was brought to enjoin the Association and Largo's principal from imposing that forfeiture. The injunction was granted and the Association appeals. We reverse.
The Association is a voluntary association of almost all private and public high schools in the State of Florida. Largo is a member. The members of the Association enact rules which regulate interscholastic athletic activities among them. These rules are contained in the by-laws of the Association. The rules applicable in this case are as follows:
A student must reside with his/her parents, or with the same one parent or other individual with whom he/she has continuously resided for a full calendar year, in his/her school community. Until he/she has met this residence requirement, he/she shall be ineligible to represent his/her school in interscholastic athletic contests. However, attendance for a full calendar year in a school other than that which serves his/her home community shall qualify a student to represent that school so far as residence is concerned.
No student is eligible, regardless of his or her eligibility in other respects, until his or her name has been submitted to the Executive Secretary on an annual eligibility list for the current school year, and if his or her name does not appear on the game eligibility list exchanged between the competing schools before the game. If an ineligible player is permitted to participate in an interscholastic athletic contest, forfeiture of the game and honors shall be mandatory ...

*400 The principal of the school represented by the ineligible participant shall forfeit the contest or contests.
The by-laws permit the Association to waive an eligibility rule (other than the age limit) on grounds of undue hardship, but there is no provision permitting waiver of a forfeiture once the rule violation has occurred which mandates the forfeiture penalty.
Christopher enrolled at Largo in August 1977. His parents were divorced and during the two years prior to August 1977 he was in the legal custody of his father and did not live in Largo. In August of 1977, Christopher began residing with his mother and her husband in the Largo school district. He was, therefore, ineligible to play football in Largo in the fall of 1977 under the one-year residency rule. He was also ineligible for the two games in question because his name was not on the game eligibility lists (although it was on Largo's annual eligibility list).
It should be noted that although Christopher "suited up" for those two games, he did not actually play in either. It should also be noted that there is absolutely no indication in this case that the rule violation was intentional or for the purpose of recruiting. Recruiting, of course, is the evil intended to be met by the one-year residency requirement.
After the situation regarding Christopher's residence was brought to the attention of the Association, it notified Largo that the two football games in which Christopher had participated must be forfeited. An application to the Association was made on Christopher's behalf requesting a waiver of the residence requirement as to him on grounds of hardship. The Association granted that application, thus making Christopher eligible to participate in future games, but insisted that the two football games in which Christopher participated while ineligible must be forfeited. This suit against the Association followed. The principal of Largo, though undoubtedly sympathetic, was made a party defendant because, apparently, he felt that he had no choice other than to comply with the by-law requirement and declare the games forfeited.
The plaintiffs are Christopher and his parents, the coach of the Largo Senior High School football team, and the team captain as representative of the team. Their complaint alleged that if Largo forfeited the two football games in question, it would no longer be in contention for the district championship and thus could not compete for the state championship in its class. The injunction granted by the trial judge prevented the forfeiture and Largo was declared district football champion, thus making Largo eligible to compete for the state championship. Thereafter, Largo's team lost in an interdistrict play-off game and was eliminated from further contention for the state championship.
By motion to dismiss this appeal, plaintiffs/appellees suggested that, since Largo's participation in the state championship play-offs had occurred and was unsuccessful, this case is now moot. Stated otherwise, plaintiffs/appellees are simply no longer interested in the outcome. The Association vigorously opposed the motion to dismiss, arguing that the interest of the Association in the integrity of its rules and their application in this case makes the outcome very important to the Association and its member schools and prevents the case from being moot. We agreed and denied the motion to dismiss. Accord, Oklahoma High School Athletic Ass'n. v. Bray, 321 F.2d 269 (10th Cir.1963).
Unfortunately, the asserted importance of this appeal to the Association was not matched by a commensurate amount of care on its part in describing to this court the issues involved. According to the Association, the case involves simply an impermissible interference by the trial judge in the internal affairs of a private voluntary association. In support of its position, the Association cited to us the 1941 decision of the Supreme Court of Florida in Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729 (1941). In that suit, which involved a dispute between a member high school and the Association, *401 the court did indeed hold that the matter was one of contract and there was no justification for interference by the court in that situation. No constitutional issues were addressed.
The Association also cited to us cases from other states holding that harshness resulting from the application of a high school athletic association's eligibility rules is not grounds for judicial interference. Morrison v. Roberts, 183 Okla. 359, 82 P.2d 1023 (1938); Sanders v. Louisiana High School Athletic Ass'n., 242 So.2d 19 (La. App. 1970). We agree with the rationale of these decisions, which are in accord with Sult v. Gilbert, supra, and would reach the same conclusion in this case were no constitutional issues presented.
Plaintiffs/appellees, for their part, and perhaps understandably in view of their present lack of interest, have likewise failed to furnish guidance to this court as to the issues here involved. They have simply cited two decisions from the Third District Court of Appeal holding that Florida high school students barred from participating in interscholastic athletic activities by the eligibility rules of the Association may be entitled, under the circumstances of those cases, to injunctive relief against the Association on due process grounds. Lee v. Florida High School Activities Association, Inc., 291 So.2d 636 (Fla. 3d DCA 1974); Florida High School Activities Association v. Bryant, 313 So.2d 57 (Fla. 3d DCA 1975). That is not the case here; the Association's waiver of the residence requirement as to Christopher on grounds of hardship made him eligible to participate in future games.
Because of the parties' treatment of the issues in their briefs and on oral argument, this court has been required to review the record to determine the basis for the ruling of the trial judge in this case, and undertake its own research to determine the principles of law which must be applied in deciding whether the trial judge was correct. Imposition of that burden on this court aggravates the problem we face in accommodating the demands of an extremely heavy case load.[1]
In the order appealed from, the trial judge set forth the following findings:
1. That the activities of [the Association] constitute "state action" in the constitutional sense.
2. That the unintentional failure to comply in every detail with the eligibility rules of [the Association] was in no way for the purpose of recruiting; or for any other purpose in contravention of the letter or spirit of the by-laws of [the Association] nor in contravention of the purpose for which they were designed.
3. That the imposition of forfeiture as a penalty for an inadvertent failure to comply with the rules of the Association constitutes an arbitrary, capricious, and unduly harsh application of the by-laws of [the Association].
The order offered no further explanation of the basis of the trial judge's decision to grant the injunction. The findings quoted above, however, clearly imply the application of constitutional principles.
The complaint in this case asserted two constitutional bases for the relief requested. One was the claim that the Association's one-year residency requirement for eligibility operated as a denial of the equal protection of the law guaranteed by the 14th Amendment to the United States Constitution and in Article I, Section 2, of the Florida Constitution. The other claim was that the imposition of forfeiture of the games in which Christopher had participated *402 while ineligible constituted a denial of substantive and procedural due process guaranteed by the 14th Amendment and in Article I, Section 9, of the Florida Constitution.
At the threshold the question arises whether the action of the Association is state action for constitutional purposes. The trial judge so found and in that respect he was eminently correct. The question is so well settled that it does not require extensive citation of authority. E.g., Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155 (5th Cir.1970). We hold, however, that plaintiffs/appellees have failed to show a deprivation by the Association of a constitutionally protected right.
As in all cases involving constitutional issues, a careful analysis of relative rights and duties as between the particular parties is necessary. We find several decisions of federal courts which have made that analysis in situations similar to that presented here. Pronouncements concerning federal constitutional issues, of course, are primarily found in decisions of federal courts. In the absence of a decision by a Florida court applicable to the situation presented in this case, we must necessarily turn to federal decisions in similar cases for guidance. We consider the federal and Florida constitutional guarantees as imposing the same standard and thus do not treat them separately. Cf. McClaskey v. Leatherman, 261 So.2d 137 (Fla. 1972) (a final decision in the federal courts finding no violation of the 14th Amendment guarantees of equal protection and due process is controlling under the rule of comity in a state suit by the same parties challenging the same matter as violative of Florida constitutional guarantees of equal protection and due process).

DENIAL OF EQUAL PROTECTION
The claimed denial of equal protection is based on exceptions to the Association's one-year eligibility rule. The complaint asserted that these exceptions create some unconstitutional classifications in that, for example, a student changing his residence from that of a parent to that of some other individual, because the parent has been committed to a correctional or state medical institution, or has died, is eligible without a one-year delay. It was claimed that, therefore, Christopher is in a class unfairly treated by the rules.
We need not examine the merits of that claim, because Christopher has neither alleged nor shown any injury personally as a result of the rule's application to him. As noted above, the Association waived the eligibility rule in Christopher's case on grounds of undue hardship, so that Christopher was not barred from participating in Largo's football games. The only injury that would be suffered, as far as this record shows, is an injury to the members of the Largo football team (including Christopher) and their coach, in that the forfeiture would have deprived the team of the title of district champion and the opportunity to compete in the state championship play-offs.
But neither the team members nor the coach have any right of redress because they have no standing to assert a claim of denial of equal protection to Christopher. In that respect we agree with the lower court in Associated Students, Inc., etc. v. National Col. Ath. Ass'n., 493 F.2d 1251 (9th Cir.1974), which held that members of a student body had no standing to assert that an NCAA eligibility rule denied equal protection to student athletes. We note that neither the coach nor the team members in the case before us asserted any denial of equal protection to them, as a team member did in Moreland v. Western Pa. Interscholastic, etc., 572 F.2d 121 (3d Cir.1978).
Therefore, for these reasons, we hold the equal protection argument fails to support the action of the trial judge in this case.

DUE PROCESS OF LAW
The crucial question here is whether the opportunity to participate in interscholastic *403 athletic activities, standing alone, is a constitutionally protected right or privilege.[2] We hold that it is not. Three United States Circuit Courts of Appeal have so ruled and the thorough discussions of the point in those cases need not be repeated here. Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155 (5th Cir.1970); Albach v. Odle, 531 F.2d 983 (10th Cir.1976); Hamilton v. Tennessee Secondary School Athletic Association, 552 F.2d 681 (6th Cir.1976). We find no federal decision to the contrary.[3]
If an individual student has no constitutionally protected right or privilege to participate in interscholastic sports activities, then it follows that, without more, a school's football team as a group has no such constitutionally protected right or privilege. We find nothing in this case to persuade us that Largo's football team has a constitutionally protected right to retain its record of games won or to be declared district champion or to compete in the state championship play-offs. The only other plaintiff in this case, the team coach, has offered no reason whatsoever to find that he has a constitutionally protected right to have a team he coached retain its win record or to have his team declared district champion or to have his team participate in the state championship.
We think it helpful to observe, parenthetically, that, likewise, Largo (not a party here) has no constitutionally protected right to its record of games won, its district championship, or the opportunity to participate in the state championship play-offs. We observe further that Largo, or the officials who represent Largo, have no constitutional duty to the Largo football team or any player higher than the contractual duty to declare the forfeiture of the two football games in question, a duty derived from Largo's agreement with the Association as represented by the Association's by-laws. Regents of U. of Minn. v. National Collegiate Athletic Association, 560 F.2d 352 (8th Cir.1977). If there is a need for a means of alleviating harsh results in cases such as that presented here, the appropriate mechanism is the Association's by-laws, which can be changed through the initiative of member schools, including Largo.
In sum, we hold that there is no right or privilege asserted in this case to which the constitutional standard of due process applies. As noted above, the only person in this case with standing to claim a denial of equal protection of the law has shown no injury. Accordingly, we hold that the granting of a permanent injunction by the trial judge was error and the same is hereby reversed.
Reversed.
GRIMES, C.J., and BOARDMAN, J., concur.
NOTES
[1] A recent study prepared by the National Center for State Courts shows that Florida district courts of appeal rank close to the top in total caseload, and have the highest caseload (both on a unit of population and per judge basis) of all state intermediate appellate courts. NCJISS, LEAA, State Court Caseload Statistics: Annual Report, 1975, Washington, D.C., U.S. Government Printing Office (1979). The high volume of cases handled by our district courts of appeal is three times greater than the number of cases leading authorities suggest as the maximum which can be handled without jeopardizing the essential qualities of the appellate process. P. Carrington, D. Meador and M. Rosenberg, Justice on Appeal, at 143 (1976); R.A. Leflar, Internal Operating Procedures of Appellate Courts, at 9 (1976).
[2] The opportunity to participate, in this case, was the opportunity to play on a winning team. We have found no case holding that such an opportunity is a constitutionally protected right or privilege.
[3] We note that one federal court has expressed the view that a one-year eligibility rule would pass constitutional muster if tested on due process grounds. Walsh v. Louisiana High School Athletic Ass'n., 428 F. Supp. 1261 (E.D. La. 1977). That case contains a thoughtful discussion of the reasons why such a rule serves a legitimate state interest and why the automatic operation of the rule (not allowing for case by case adjudication of whether recruitment is actually involved in a particular case) is justifiable as the only effective plan for regulating recruiting.