409 So.2d 245 (1982)
The FLORIDA HIGH SCHOOL ACTIVITIES ASSOCIATION, INC., Anthony Pariso, and Fred Cooley, Appellants,
v.
George THOMAS, by and through His Mother and Next Best Friend, Mamie Thomas; Etc., et al., Appellees.
No. 81-2534.
District Court of Appeal of Florida, Third District.
February 9, 1982.
*246 Walton, Lantaff, Schroeder & Carson and John Patrick Joy and George W. Chesrow, Miami, for appellants.
Arky, Freed, Stearns, Watson & Greer and Richard M. Dunn, Miami, for appellees.
Before BARKDULL, HENDRY and JORGENSON, JJ.
BARKDULL, Judge.
The appellees, as representatives of a class, brought a complaint for declaratory decree and injunctive relief seeking to enjoin the appellant Association, and Pariso and Cooley, as Principal and Coach (respectively) of the high school attended by their sons, from enforcing a rule of the Florida High School Activities Association, Inc. (hereinafter referred to as FHSAA), limiting the number of players that may participate in post-season football championship play.
Following an evidentiary hearing, the trial court entered a temporary restraining order in words and figures as follow:
... .
"THIS CAUSE is before the Court on plaintiff's Complaint for Declaratory and Injunctive Relief, and their Motion for Temporary Restraining Order. On November 20, 1981, plaintiffs filed this action together with their motion for temporary restraining order. Plaintiffs allege that the defendants were improperly prohibiting the participation of the plaintiffs' sons in play-off games for the State Championship.
"Plaintiffs brought to the Court's attention the emergency nature of the motion. Killian High School was scheduled to compete in a play-off football game on November 27, 1981, and if winners, on December 4, 1981, December 11, 1981 and December 18, 1981. To avoid the obvious irreparable injury which would have been suffered by a deferred ruling in this cause, the Court set a hearing on plaintiffs' motion for injunctive relief for November 24, 1981 at 4:00 p.m. In light of the emergency situation, defendants received timely and adequate notice of the motion and hearing. Therefore, this Court proceeded to receive evidence and hear argument of counsel.
"Based upon the evidence presented by the parties hereto, the Court finds and concludes as follows:
1. This Court has jurisdiction of the parties and subject matter herein.
2. The sons of all of the plaintiffs are students at Killian High School, have participated as members of that high school's football team for at least one (1) year, and are otherwise eligible to participate in high school football.
3. The Florida High School Activities Association, Inc. is the state authority which controls all high school interscholastic activities including interscholastic athletics. It is, in effect, mandatory for the principal of every high school or secondary school in the State of Florida which wishes to participate in interscholastic *247 activities to belong to the Florida High School Activities Association, Inc. Thus, Killian High School, in order to be accredited, must abide by the Florida High School Activities Association, Inc.'s rules and regulations.
4. The aim of the Florida High School Activities Association, Inc. is to promote, direct and control all interscholastic activities of high school students, both athletic and non-athletic; to establish, maintain and enforce such regulations as may be necessary to assure that all such activities are a part of and contribute towards the entire educational program of the State of Florida; to cooperate closely with the State Department of Education in the development of that program; to safeguard the physical, mental and moral welfare of high school students and protect them from exploitation.
5. Football is an American tradition which has formed a great cornerstone in shaping the lives of literally millions of Americans. It is uniquely adapted to educating our youth to the unquestioned merit of mental and physical discipline, wholesome and worthy competition under rules of good sportsmanship and fair play, and the achievement of excellence. Americans who have drawn upon their early lessons in football include Presidents Reagan, Kennedy and Eisenhower and Supreme Court Justice White. Thus, while football may be a privilege, it is an essential part of the American educational mosaic.
6. Rule 5 of the Florida High School Activities Association's "Contest Regulations" (Rule 5), states:
Each team will be allowed a maximum of 44 players in uniform for each game.
7. Rule 5 does not apply to regular season football games. Except for certain eligibility requirements, there are no limitations on the number of student participants in the football program during the regular season.
8. Because of Rule 5, the defendant Cooley (head football coach at Miami Killian High School) advised the individual plaintiffs' sons and the members of the class who are on the Killian High School football team that they could not participate in the play-offs for the State Championship.
9. Regardless of whether or not the Florida High School Athletic Association, Inc. is a state agency or private voluntary organization, the result in this case must be the same. This Court is reluctant to interfere with the internal affairs of such an organization. However, it is a fundamental concept of our jurisprudence that every wrong must have a remedy: a person must be able to secure judicial redress from mistake, fraud, bad faith, collusion or arbitrariness. This Court finds that the plaintiffs' sons and members of their class are victims of arbitrariness and irrationality with respect to the application of Rule 5.
10. It is clear that the Florida High School Activities Association has the responsibility for supervision and control of all facets of interscholastic athletics in the private and public schools of the State of Florida. As such the Florida High School Activities Association is an arm of the State Department of Education.[1] The activities of the Association are so intertwined with that of the state, its conduct must be deemed to be state action in the constitutional sense. Mitchell v. Louisiana High School Activities Association, Inc., 430 F.2d 1155 (5th Cir.1970); Florida High School Activities Association, Inc. v. Bradshaw, 369 So.2d 398 (Fla.2d DCA 1970). While the participation in high school athletics is a privilege, such a classification does not carry with it the right by the state to dispense with this privilege arbitrarily and irrationally. Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S.Ct. 1322, 1327 n. 6, 22 L.Ed.2d 600 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Vitek v. Jones, 445 U.S. 480, 490-91, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552 (1980).
11. As stated above, Rule 5 by its own standards is arbitrary and irrational and creates two classes of football players. One class is the football player who practices *248 every day and is eligible to play in all games, play-offs and championship games. The other class is the football player who practices every day, and is eligible to play only in regular season games despite his contribution to the team's success. As a result, and based upon the facts of this case, Rule 5 is unconstitutionally impermissible and must be struck down by this Court.
12. Finally, in this day and time when we are confronted with crime, vice and the rampant abuse of drugs and other forms of anti-social behavior, it is shocking and reprehensible to all society that an `official' body would arbitrarily deny and abridge to our youth the right to participate in an athletic program and in particular football play-offs and championship games, a game which is not only wholesome and pure but socially acceptable. Sullivan v. Florida High School Activities Association, et al., 38 Fla. Supp. 18 (Circuit Court, Dade County 1972). The very goal of putting on that uniform, the chance to someday start in a game, or even play before your peers, family and fans is the reason for going out for the team and taking your bumps and bruises. This reward is earned. Anyone who has labored on the athletic field is well aware of the hard work, sacrifice and trauma (not to mention the pound of dirt you eat) that occurs during the weeks of practice. To create a situation where a student athlete is reduced to a blocking dummy during the week and being told `give us your hard work, sacrifice and trauma during practice, but you cannot put on the school uniform nor play' runs directly counter to the American tradition of fair play. To allow an unlimited roster during the season and then to limit that roster during the play-offs and championship games is arbitrary and irrational.
13. This Court finds that the witnesses called by defendants were unable to advance any credible reasons for the existence of Rule 5.
14. The Court finds that irreparable injury will occur to the class of plaintiffs if defendants enforce Rule 5 during the current play-offs. Further, the Court finds that no injury will occur to defendants as a result of an Order enjoining enforcement of Rule 5 in the play-offs.
"Based upon the foregoing facts and conclusions, it is
ORDERED AND ADJUDGED as follows:
1. The case is certified as a class action in accordance with the class allegations contained in plaintiffs' Complaint and their Amendment to Complaint.
2. The activities of the Florida High School Activities Association, Inc. (`FHSAA') constitute state action.
3. Rule 5 discriminates against all student participants who occupy a roster position of number 45 or above on the football rosters of AAAA schools.
4. This Court finds that Rule 5 is arbitrary, capricious and unconstitutional.
5. Defendants are enjoined from enforcing this Rule from the date of this Court's oral Order on November 24, 1981."
... .
[1] In Dade County, the evidence shows and I find that a specific Dade County School Board rule requires all county schools to be members of the FHSAA and to follow FHSAA rules.
This appeal ensued, the appellants urging that the trial court erred in holding Rule 5 unconstitutional under the equal protection clause of the Florida Constitution, and that the trial court erred in interfering with the internal affairs of a voluntary association. We affirm.
We dispose of the second point first. It has heretofore been held in Florida that the FHSAA partakes of a public or quasi-public body. Florida High School Activities Association, Inc. v. Bryant, 313 So.2d 57 (Fla. 3d DCA 1975); Lee v. Florida High School Activities Association, Inc., 291 So.2d 636 (Fla. 3d DCA 1974); Sullivan v. Florida High School Activities Association, 38 Fla. Supp. 18 (Cir.Ct. 1972). This is particularly true when if you do not belong to the Association a school's athletic team cannot participate in contests against teams who *249 are members of the Association and, in fact, the Dade County School Board has required all Dade County schools to be members of this Association. Therefore, we find no merit in this point.
The first point presents a more difficult problem. However, it appears from the evidence that the arbitrary limitation of 44 players being permitted to participate in championship activities is unreasonable under the circumstances. It is clear from this record that there are, among those without the 44 who are not permitted to participate in championship play, players who did in fact contribute to their team's ability to advance to the championship series and that the enforcement of Rule 5 is depriving them of the benefits of the fruits of their labors without a reasonable justification in the record. However, it appears from the record of the evidence adduced that the adoption of Rule 5 does not meet the three evils it was to cure: (1) to preserve "bench control"; (2) to control costs; (3) to create parity among the Class AAAA.
As to the first, the evidence is that there never has been a "bench control" problem in championship games, so this could not have contributed to the reasons for the classification. Next, the amount of money that the Association is required to spend is limited by its bylaws and, therefore, it is not impacted by the number of players who participate. Lastly, the events that eliminated certain of the participants from the championship eliminations clearly indicate that the number of players had nothing to do with parity.[1] The record in this case shows, without contradiction, that permitting an unlimited number of players contributes substantially both to the welfare of the individual student participant and to the overall general welfare of the school and community.[2] We find that the plaintiffs had standing to bring the instant action. Frankel v. City of Miami Beach, 340 So.2d 463 (Fla. 1976); Harrell v. Hess Oil and Chemical Corp., 287 So.2d 291 (Fla. 1973); Fla.R.Civ.P. 1.220. We find that they were representatives of the class,[3] and that the trial court correctly held that the *250 classification limiting team members in championship play-offs, as established in Rule 5, was in fact arbitrary. Therefore, the trial court was correct in enjoining its application. Florida High School Activities Association, Inc. v. Bryant, supra; Lee v. Florida High School Activities Association, Inc., supra; Sullivan v. Florida High School Activities Association, supra; Sullivan v. University Interscholastic League, 616 S.W.2d 170 (Tex. 1981); compare, Moran v. School District # 7 Yellowstone County, 350 F. Supp. 1180 (D.C.Mont. 1972).
Therefore, the order granting temporary restraining order here under review be and the same is hereby affirmed.[4]
Affirmed.
JORGENSON, Judge, concurring in part, dissenting in part.
I agree with the majority that the plaintiffs below, appellees here, constitute an appropriate class and, further, that the Florida High School Activities Association, Inc., is fairly characterized as a public (or quasi-public) body. Florida High School Activities Association, Inc. v. Bryant, 313 So.2d 57 (Fla. 3d DCA 1975).
I would not, however, reach the constitutional issue as framed by these pleadings that Rule 5 is "arbitrary" and "irrational". The record reflects that no attempt has ever been made to change or otherwise amend the Rule by members of this plaintiff class or anyone else since 1967.[1]
Mr. Fred Rozelle[2] who is executive director of the FHSAA gave competent testimony with respect to the reasons for Rule 5. Other evidence was received that no attempt has been made to amend Rule 5 pursuant to the by-laws of the governing body. Since the plaintiff class has made no effort to utilize alternatives available to it prior to this litigation, I would deny the relief requested. Webb v. Hill, 75 So.2d 596 (Fla. 1954); Florida High School Activities Association, Inc. v. Bradshaw, 369 So.2d 398 (Fla. 2d DCA 1979); State Board of Education v. NCAA, 273 So.2d 912 (La. App. 1973).
I would reverse.
NOTES
[1] On Friday night, December 11, 1981, Killian High school (which dressed 89 players) was defeated in a semi-final championship game by Vero Beach High School (which dressed 47 players). Central Theatres, Inc., v. State, 161 So.2d 558 (Fla. 2d DCA 1964); Section 90.202(11)(12), Florida Statutes (1981).
[2] "Q Do you feel that there are any benefits to the students by playing football?

... .
"A Yes, I certainly do.
"Q (By Mr. Dunn) Could you tell us what those benefits are?
"A My personal feeling is that every kid that participates in any kind of activity is one less kid you have problems with. I think it benefits the kids to be involved in things at school.
... .
"Q Do you feel there are any advantages to the kids directly?
"A Definitely.
"Q Can you tell me what those are?
"A I have had parents time and time again tell me, `As long as I know our son is with you, I know where he's at from 2:15 until around 6:45 to 7:00; I know where he's at, and I ain't got to worry about him.'
And this is one of the main things that I feel that I can help the kid. I can't help him if he's not with me."
... .
[3] "2. Paragraph 20 shall be amended as follows:

20. There are 43 members of the class who attend Killian High School. There are 16 districts which make up Class AAAA and each district has a champion. It is impossible at this time to accurately state the number of class members from other schools within the districts which make up class AAAA. However, it is believed that there are in excess of 150 members of the class.
"3. Paragraph 21 shall be amended as follows:
21. The class alleged by this action consists of all high school students who
(a) attend an FHSAA member school with an AAAA classification and which school is a District football champion;
(b) played football for the interscholastic varsity team;
(c) are members of the football team at such school and constitutes the 45th player on the football roster or a number higher than 45 on the roster; and
(d) will be prohibited from playing in the post-season championship games because of Rule 5."
[4] This cause having statewide impact possibly on the results of the 1981 championship series and certainly on future championship contests, the cause will be certified to the Supreme Court of Florida under the provisions of Article V, Section 3(b)(4), Constitution of the State of Florida, being a decision that passes upon a question of great public interest.
[1] An amendment to Rule 5 was made in 1966 increasing from thirty-six to forty-four the number of players who would be eligible to participate in playoff games.
[2] No relation to Pete Rozelle of the National Football League.