ADKINS, Justice.
The Florida High School Activities Association, hereinafter referred to as the FHSAA, seeks the review of a decision of the Third District Court of Appeal which declared Rule 5 of the FHSAA football contest regulations unconstitutional under the Florida Constitution’s equal protection clause, article I, section 2. The Florida High School Activities Association v. Thomas, 409 So.2d 245 (Fla. 3d DCA 1982). The Third District Court of Appeal certified its decision to this Court as passing upon a matter of great public importance. We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution, and Rule 9.030(a)(2)(A)(v) of the Florida Rules of Appellate Procedure. We quash the decision.
The FHSAA regulates interscholastic activities of Florida high school students. Most Florida high schools are members of the FHSAA and are represented in the organization by the member school’s principal. These representatives adopted Rule 5 as part of a set of rules entitled “Florida High School Football Championship Playoff Program.” The rule, which is operative only during post-season play-off competition, provides as follows: “Each team will be allowed a maximum of 44 players in uniform for each game.” As a result of Rule 5, the respondent, a participating member of the Killian High School football team during the regular season, was informed that he would not be permitted to participate in his school’s post-season play. He then instituted a class action on behalf of himself and various members of the Kil-lian High School football team and other class AAAA football teams similarly situated. He contended that, since he was not among the forty-four players selected by the coach to compete in the 1981 play-off games, the enforcement of Rule 5 denied him equal protection under the law. The trial court granted the requested temporary restraining order after finding that the rule had arbitrarily discriminated against student participants who occupy roster positions of number forty-five and above on *308 Florida Class AAAA high school football teams.
The Third District Court of Appeal affirmed the order of the trial court and declared Rule 5 unconstitutional on grounds that the classification limiting the number of football team members during post-season play was arbitrary and operated to deny respondent equal protection under the law. The Third District’s decision runs contrary to basic constitutional principles enunciated by this Court and the Supreme Court of the United States. We therefore reverse.
Inasmuch as the FHSAA has exclusive authority and responsibility for controlling all aspects of interscholastic activities in both public and private high schools throughout Florida, the association’s promulgation and adoption of Rule 5 should be considered “state action” for purposes of constitutional analysis. See, Lee v. Florida High School Activities Association, 291 So.2d 636 (Fla. 3d DCA 1974). In so ruling this Court approves that portion of the Third District’s decision which concluded in similar fashion. However, our agreement with the lower court’s ruling ends here.
Where an equal protection challenge is brought before a court of law, that court must, from the outset, determine the appropriate level of judicial scrutiny to be applied to the state regulation under attack. In the instant case, the decision of the Third District Court intimates an application of a “strict scrutiny” analysis; a standard of review clearly inappropriate under the circumstances. This harsh standard imposes a heavy burden of justification upon the state and should be applied only to those actions by the state which abridge some fundamental right or affect adversely upon some suspect class of persons. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); In re Estate of Greenberg, 390 So.2d 40 (Fla.1980), appeal dismissed sub nom., Pincus v. Estate of Greenberg, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981). As there is no constitutional right to play football or to participate in post-season football play-offs, see, Florida High School Activities Association v. Bradshaw, 369 So.2d 398 (Fla. 2d DCA 1979), and Rule 5 affects no suspect class, see, Parham v. Hughes, 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979), the rule should have been analyzed under a “rational basis” standard and not given “strict scrutiny.”
Under a “rational basis” standard of review a court should inquire only whether it is conceivable that the regulatory classification bears some rational relationship to a legitimate state purpose. See, In re Estate of Greenberg. The burden is upon the party challenging the statute or regulation to show that there is no conceivable factual predicate which would rationally support the classification under attack. Where the challenging party fails to meet this difficult burden, the statute or regulation must be sustained. Fraternal Order of Police v. Department of State, 392 So.2d 1296, 1302 (Fla.1981); Lewis v. Mathis, 345 So.2d 1066 (Fla.1977).
In the case sub judice, Rule 5 operates to limit player participation only during post-season contests. Consequently, two classes are drawn; one comprised of Florida high school football players participating during the regular season, the other comprised of those competing in post-season play. The purpose of this player limitation, as submitted at trial by the FHSAA, is threefold: 1) to reduce the costs of play-off contests; 2) to promote fair play in championship tournaments; and 3) to prevent the occurrence of violence during play-off games. There being no compelling evidence in the record which discredits the integrity of these proposed goals of Rule 5, this Court, under the “rational basis” standard, will assume that there is a legitimate state interest in achieving these objectives. Cf., Weinberger v. Wissenfeld, 420 U.S. 636, 648, 95 S.Ct. 1225, 1233, 43 L.Ed.2d 514 (1975) (proposition different where there is a gender based classification). Hence, the narrow issue for this Court to determine is whether it is conceivable that the classification drawn between regular season and post-season play would rationally further the aforementioned purposes of the *309 FHSAA. If there is any realistic and rational set of facts which supports the classification, Rule 5 must be sustained. Fraternal Order of Police v. Department of State; see also, Lewis v. Mathis.
From our review of the record we find credible evidence establishing several characteristics in play-off competition which render it conceivably different from regular season play. At trial, the petitioner offered competent testimony showing that play-off competition is more expensive than regular season play. Regular season football contests are generally scheduled for local in-tradistrict competition among high schools within a close geographical proximity. Overnight lodging for team members during the regular season is the exception rather than the rule. Post-season play, however, involves intrastate competition where the distance between the competing schools is often extreme. Consequently, overnight lodging for team members, coaches, staff, and chaperones is often a necessity. It is at least arguable that, by limiting the number of players allowed to compete in post-season play, the FHSAA would reduce the inflated travel and lodging expenses inherent in championship competition thereby enabling member schools to adequately fund other educational and sports functions.
We find further that Rule 5 is reasonably related to promoting fair play in post-season games. The FHSAA accurately contends that player depth is a significant factor contributing toward a team’s ability to exhaust an opponent during the course of a game. This factor poses special problems during statewide play-off competition; for, as teams from various geographical regions compete against one another, the disparity between the sizes and the financial conditions of the respective schools is often accentuated. Rule 5 serves as a rational attempt to prevent schools which happen to be located in wealthier and/or larger communities (and could therefore transport, lodge, and play greater numbers of players) from abusing this adventitious advantage. Similar regulations have likewise withstood equal protection and due process attacks on grounds that they were legitimate attempts to achieve competitive balances in high school athletics. See, Kite v. Marshall, 661 F.2d 1027 (5th Cir.1981), cert. denied, 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982); Walsh v. Louisiana High School Athletic Association, 616 F.2d 152 (5th Cir.1980), cert. denied, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981).
We also find that the player limitation imposed by Rule 5 is a rationale attempt to prevent the outbreak of violence in play-off competition. At trial the petitioner offered testimony to the effect that tempers tend to flare during football games. These witnesses further testified that emotions run higher in play-off contests than during the regular season. While there is no concrete evidence or specific data supporting this position, we find it at least arguable that, as the importance of a contest increases, the level of emotion spawned from such a contest tends to intensify. Moreover, there can be little doubt that by limiting the number of players on opposing sidelines, the officials and the respective coaches are better able to maintain control over the game thus reducing the risk of unsanctioned outbreaks of violence. We therefore find Rule 5 to be, at a minimum, a legitimate attempt at preventing violence in post-season play.
The issue at bar is not whether Rule 5 is necessarily the most effective means for achieving fiscal stability, fair play, and participant control in high school football championships. Rather, the question is whether evidence exists so that the rule is a theoretically rational or fairly debatable means of accomplishing these goals. See, State v. Cloverleaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). While Rule 5 will inevitably and unfortunately preclude certain players from participating in post-season play, this, in itself, does not deny those players equal protection under the law. In the instant case, the record contains a realistic and rational set of facts which may serve as a reasonable basis to support Rule 5 and its objectives. Therefore, under a “rational basis” standard of review, the rule adopted by the FHSAA passes constitutional muster. See, *310 Fraternal Order of Police v. Department of State.
Accordingly, we quash the decision of the Third District Court of Appeal and remand the cause to that court with instructions to reverse the judgment of the trial court and further remand to the trial court with instruction to deny the injunction.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVER-TON, McDonald and EHRLICH, JJ., concur.