NORTHCUTT, Judge.
Under section 985.215(6), Florida Statutes (2000), the circuit court must require the parents or guardian of a child who is detained during delinquency proceedings to pay fees to the State for the cost of the child’s subsistence. B.S., a minor, and his mother, D.L.S., challenge the constitutionality of this statute. They maintain that it violates equal protection when it results in exonerated juveniles being treated differently than exonerated adults. They also contend the statute violates substantive due process insofar as it requires payment *17 of subsistence costs for a child’s detention at home. We agree with both assertions.
Subject to some exceptions not germane here, the disputed portion of the statute provides in pertinent part:
When any child is placed into secure, nonsecure, or home detention care or into other placement pursuant to a court order following a detention hearing, the court shall order the natural or adoptive parents of such child, including the natural father of such child born out of wedlock who has acknowledged his paternity in writing before the court, or the guardian of such child’s estate ... to pay to the Department of Juvenile Justice fees in an amount of $20 per day related to the cost of the care, support, and maintenance of the child, as established by the Department of Juvenile Justice, unless the court makes a finding on the record that the parent or guardian of the child is indigent.
§ 985.215(6), Fla. Stat. (2000).[1]
As used in the juvenile delinquency chapter, “home detention” is defined as “temporary custody of the child while the child is released to the custody of the parent, guardian or custodian in a physically nonrestrietive environment under the supervision of the Department of Juvenile Justice staff pending adjudication, disposition, or placement.” § 985.03(18)(c), Fla. Stat. (2000).
In this case, B.S. was taken into police custody on November 5, 2000 and remained there until the next morning, when the circuit court ordered home detention and released him to his parents’ custody. On November 30, 2000, the court ordered the parents to pay $20 per day for the cost of B.S.’s care through that date. Subsequently the State filed a “no petition” in the case. D.L.S. then filed a pro se motion to rescind the costs order. She argued that she should not be required to pay because the State had decided not to prosecute the case and because B.S.’s detention was in her home. Noting the mandatory language of section 985.215(6), the court denied the motion.[2]
At the outset, the State contends that B.S. and D.L.S. did not raise the validity of the statute in the circuit court and therefore failed to preserve the constitutional issues for appeal. We disagree. We have reviewed D.L.S.’s pro se motion and her argument in the circuit court and conclude that they adequately asserted the constitutional challenges. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (noting that the allegations of a pro se litigant are held to less stringent standards than the formal pleadings drafted by lawyers).
I. EQUAL PROTECTION
The heart of an equal protection argument is that the State has adopted a classification that affects two or more similarly situated groups in an unequal fashion. B.S. and D.L.S. claim that the State treats *18 accused juvenile offenders differently from accused adult offenders with respect to the payment of subsistence costs. Under section 951.033(2), Florida Statutes (2000), adult prisoners must pay for their subsistence costs. But section 939.06, Florida Statutes (2000), provides that, if an adult criminal defendant is acquitted or discharged, he is not liable for court costs, fees of a ministerial government office, or subsistence costs. See also Williams v. Ergle, 698 So.2d 1294, 1297 (Fla. 5th DCA 1997). For these purposes, the State’s entry of nolle prosequi amounts to a discharge. Clark v. State, 570 So.2d 408, 410 (Fla. 2d DCA 1990). In contrast, section 985.215(6) mandates payment of a daily fee to the Department of Juvenile Justice for the “cost, care, support, and maintenance” of an accused child who has been placed in detention, but it does not relieve a parent or guardian from paying the fee if the child is acquitted of the charged delinquent act or the State decides not to proceed against him.
When considering whether a statute runs afoul of equal protection, we must first determine what level of scrutiny to apply: “(1) ‘ordinary’ scrutiny; (2) ‘mid-level’ scrutiny; or (3) ‘strict’ scrutiny.” N. Fla. Women’s Health & Counseling Servs., Inc. v. State, 28 Fla. L. Weekly S549, 552, — So.2d -, -, 2003 WL 21546546 (Fla. July 10, 2003) (citations omitted). Ordinary scrutiny applies to most legislation; mid-level scrutiny applies to certain types of speech and some suspect classifications; strict scrutiny applies when the legislation affects a fundamental right or a suspect class. Id. at S563 n. 14-16, -. We conclude that ordinary scrutiny is appropriate in this case because ho fundamental right is asserted and youth is not a suspect classification. D.P. v. State, 705 So.2d 593, 597 (Fla. 3d DCA 1997).
Under ordinary scrutiny, a legislative act is presumed constitutional. State v. Bussey, 463 So.2d 1141, 1144 (Fla.1985). To withstand such scrutiny, the law must “bear some rational relationship to legitimate state purposes.” San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 40, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Statutory classifications that treat one group differently than others must appear to be based on a rational distinction having a reasonable relation to a legitimate state objective. Fla. High Sch. Activities Ass’n v. Thomas ex rel. Thomas, 434 So.2d 306, 308 (Fla.1983).
In some circumstances the State may treat juvenile offenders differently than adult offenders. These differences are justified because the objectives of the juvenile justice system differ from those of the criminal justice system. In the case of adult offenders, the State’s primary objective is to punish them for their crimes. But for juvenile offenders, its goal is to
ensure the protection of society, by providing for a comprehensive standardized assessment of the child’s needs so that the most appropriate control, discipline, punishment, and treatment can be administered consistent with the seriousness of the act committed, the community’s long-term need for public safety, the prior record of the child, and the specific rehabilitation needs of the child....
§ 985.01(c); see also P.W.G. v. State, 682 So.2d 1203, 1207-08 (Fla. 1st DCA 1996), approved, 702 So.2d 488 (Fla.1997); In re J.P., 405 So.2d 497, 498 (Fla. 4th DCA 1981). Thus, for example, a statute imposing a five-day detention period on a juvenile who commits an offense using a firearm does not violate equal protection, even when no like penalty is imposed on an adult offender because the statute is rationally related to the legislature’s purpose of preventing the juvenile’s escalation into the adult criminal justice system. T.M. v. State, 689 So.2d 443, 445 (Fla. 3d DCA 1997).
*19 Although we recognize that the criminal and juvenile justice systems have different correctional objectives, the issue here is not the disparate treatment of offenders. Rather, the issue is whether the State has a legitimate objective that justifies discriminating between adults and children when they have not been prosecuted for an offense or have been found not to have committed one.
We previously have held that the legislative purpose behind section 939.06 is to protect a criminal defendant from paying costs when he is innocent or when the State fails to vigorously prosecute him. State v. Crawford, 378 So.2d 822, 823 (Fla. 2d DCA 1979); see also Fuller v. Oregon, 417 U.S. 40, 49-50, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974) (noting the policy behind a similar Oregon enactment that freed an- exonerated defendant from liability for costs: the statute attempts to achieve fairness for a defendant whose trial ends without conviction because that person “has been seriously imposed upon by society without any conclusive demonstration that he is criminally culpable”). We can conceive of no reason why this policy or purpose is not equally applicable to a juvenile. See Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966) (holding that a New Jersey statute imposing a duty to reimburse county for cost of transcript in case of an unsuccessful appeal only on indigent defendants who were imprisoned and not imposing the cost on defendants who received a suspended sentence, were placed on probation, or who were sentenced only to pay a fine, violated equal protection). To the extent that section 985.215(6) requires the payment of fees for the “cost of the care, support, and maintenance” of a child who has been acquitted of the charged offense or whom the State has determined not to prosecute, it violates equal protection and is unconstitutional.
II. SUBSTANTIVE DUE PROCESS
“To comply with the constitutional guarantee of due process, a state statute must bear a reasonable relationship to a permissible legislative objective. Further, the statute must not be discriminatory, arbitrary, or oppressive.” Lite v. State, 617 So.2d 1058, 1059-60 (Fla.1993) (internal citations omitted); see also Ilkanic v. City of Fort Lauderdale, 705 So.2d 1371, 1372 (Fla.1998); Joseph v. Henderson, 834 So.2d 373, 375 (Fla. 2d DCA 2003). As in an equal protection, inquiry, we must first determine the level of scrutiny to apply in this substantive due process challenge. We have some concern that D.L.S.’s fundamental right to parent is affected by this statute. But we need not analyze the statute under strict scrutiny because we conclude that, as applied to home detention, section 985.215(6) bears no rational relationship to a permissible legislative objective, and it is arbitrary and oppressive.[3]
The State contends the costs imposed under the statute are appropriate because an accused juvenile offender is under supervision regardless of whether he is housed at a detention center or at home. We reject this argument because section 985.215(6) does not address costs of supervision; the fees imposed pursuant to the statute are for subsistence, i.e., for “the costs of care, support and maintenance of the child.”
Even so, we do discern a permissible purpose underlying section 985.215(6): - to alleviate the financial burden borne by the State when a child is detained and to place that burden on the parents or guardian of the child rather than the citizens of Florida. Cf. § 951.033(1) (stating legislative intent behind imposing costs on adult offend *20 ers “is an urgent need to alleviate the increasing financial burden on the state and its local subdivisions caused by the expenses of incarcerating convicted offenders”); Ilkanic, 705 So.2d at 1372 (noting the same intent behind a predecessor statute to section 953.033(1)); Joseph, 834 So.2d at 376 (stating that purpose of inmate per diem fee was to reimburse the government for the costs expended in incarceration).
Consistent with that purpose, we have no quarrel with requiring a parent to pay the State for her child’s subsistence if the child is detained at State expense. But when the child is detained at home, the State incurs no expense for the child’s subsistence. In such circumstances, requiring payment of subsistence costs to the State bears no rational relationship to the legislative purpose of easing the State’s financial burden associated with caring for detained children because the State has suffered no burden. See Joseph, 834 So.2d at 376 (finding a substantive due process violation where the sheriff charged a $20 fee for prisoners returned to custody from the Department of Corrections on a writ a prosequendum, but did not charge the fee to inmates returned on writs ad testificandum; holding that the distinction drawn between the two writs did not bear a fair and substantial relation to the object of the statute).
Moreover, the statute is arbitrary and oppressive. It requires a parent who cares for her child in her own home to pay the State the same sum for “costs of care, support and maintenance” as a parent whose child is being cared for at government expense. Whereas the latter parent is paying the mandated fee to, in effect, reimburse the State for assuming her support responsibilities during her child’s detention, the former parent must pay the fee and support her child. As a result, the parent of a child placed in home detention must expend more, perhaps as much as twice more, for the child’s subsistence than the parent of a child detained in state custody. Accordingly, we hold that section 985.216(6) is unconstitutional to the extent that it requires the parents or guardian of a child who is found innocent or who is not prosecuted to pay for the “cost of care, support and maintenance” of the child. The statute is also unconstitutional insofar as it requires payment of those costs for a child who is detained at home. We reverse and remand with directions to vacate the order requiring D.L.S. to pay these costs.
FULMER, J., and DANAHY, PAUL W., Senior Judge,[4] Concur.

. The legislature amended some provisions of section 985.215(6), Florida Statutes (2000), after the appeal was filed. Ch.2001-125, § 20, Laws of Fla. Although the act was not filed with the Secretary of State until May 31, 2001, by its terms it became effective upon becoming a law and operated retroactively to July 1, 2000. Id. In any event, the portions of the statute analyzed in this opinion are the same in both the 2000 and the 2001 enactment.

. B.S. and D.L.S. have standing to appeal this order. § 985.234(1), Fla. Stat. (2000). We also note that after this appeal was filed, the Department of Juvenile Justice changed the balance owed for B.S.'s care to zero. But the issues raised here are not moot because the order requiring the parents to pay the costs of care remains in effect and is enforceable.

. Of course, as earlier discussed, the State may not impose these costs at all if the juvenile has been acquitted or the State has dropped the prosecution.