In the Matter of CHRISTOPHER CASO, an Infant, by RON-ALD L. CASO, His Parent and Natural Guardian, Appellant, v NEW YORK STATE PUBLIC HIGH SCHOOL ATH-LETIC ASSOCIATION, INC., et al., Respondents.

Fourth Department, December 12, 1980

APPEARANCES OF COUNSEL

*O'Hara & O'Hara (Dennis G. O'Hara* and *Dennis E. A. Lynch* of counsel), for appellant.

*Hancock, Estabrook, Ryan, Shove & Hust (Ronald R. Shaw* of counsel), for respondents.

### OPINION OF THE COURT

SCHNEPP, J.

We are called upon to consider the circumstances under which the withdrawal of a student's privilege to participate in high school interscholastic athletics, because of a violation of eligibility rules, is subject to judicial review. In this CPLR article 78 proceeding, petitioner Ronald L. Caso appearing on behalf of his son, Christopher Caso, seeks an order annulling respondents' determination that Christopher was ineligible to participate in further high school gymnastics during the 1979 season.

The respondent, New York State Public High School Athletic Association, Inc. (Athletic Association), is a not-for-profit corporation consisting of a voluntary association of schools operating under the aegis of the New York State Commissioner of Education (see 8 NYCRR Part 135) and consists of various subdivisions called sections, which include Section III. Section III is comprised of 106 schools,

including the East Syracuse-Minoa School District. The boards of education of these schools have formed leagues and associations and are required to conform to approved rules and standards of the Athletic Association including certain eligibility standards which are in question here. The individual respondents are officers of Section III. Petitioner is the gymnastic coach at East Syracuse-Minoa which Christopher, a State high school gymnastic champion, attends.

The underlying facts are not disputed. On November 16 and 17, 1979 an international gymnastic contest featuring a South African team and certain individual American gymnasts was held in Reading, Pennsylvania. At some time in mid-October, 1979 Christopher was invited to participate. The Section III championship competition to determine which gymnasts would represent it in the State finals on December 1, 1979 at Oneonta, New York, was also scheduled to be held on November 16, 1979.

On November 15, 1979 petitioner was advised by respondent Alfred Knieser, Chairman of Gymnastics of the Section III Athletic Council of the Athletic Association, that, pursuant to rule 13 of the eligibility Standards of the Athletic Association, Christopher's participation in the Reading competition would render him ineligible to compete in interscholastic gymnastics for the remainder of that season. Respondent Alton B. Doyle, Executive Secretary of the Athletic Association, similarly advised petitioner of the effect of a Reading appearance on Christopher's eligibility. Christopher participated in the Reading event, did not compete in the Section III gymnastics finals on November 16, 1979 and was declared ineligible to participate in the State finals on December 1, 1979.

Rule 13 of the Eligibility Standards of respondent Association provides as follows:

"OUTSIDE COMPETITION: (a) No contestant may participate in non-school contests in baseball, basketball, cross country, fencing, field hockey, football, gymnastics, ice-hockey, indoor track, lacrosse, track and field, soccer, softball, swimming, volleyball, wrestling, after the student has participated in the first interschool contest in that sport in

that season. This applies to all interschool competition in the above named sports.

"(b) A student competing in any sport listed in (a) above in any game, meet, tournament, or athletic contest in the same sport loses eligibility in that sport from the date of such participation for the remainder of that sport season."

At Special Term petitioner argued that article 78 relief was appropriate since respondents' determination comes within the strictures of CPLR 7803 (subd 3) and that respondents lacked jurisdiction to prohibit Christopher's participation as an individual in the Reading event. Petitioner also argued that respondents' actions in penalizing Christopher stigmatized his good name and reputation and thus jeopardized his "liberty interest" under the due process clause of the Federal and State Constitutions, imposed a sanction without notice or an opportunity for a due process hearing, and violated the equal protection clause of the New York State Constitution since no rational basis exists for the distinctions made by rule 13 among various classes of sports.

Respondents contend that rule 13 has existed essentially unchanged for over 55 years and that many other States have similar prohibitions. They indicate that a limited number of sports are exempt, due to lack of competition among schools in those sports, e.g., skiing, bowling, golf and tennis. Respondents state that the purposes of the rule 13 prohibition are to (1) insure that high school athletes participate under safe and healthy conditions; (2) promote school and team loyalty by limiting participation to the athlete's team during the school season; (3) avoid overtraining a high school athlete by not permitting participation in more extensive programs than those offered by the school; and (4) assure that the high school athlete has only one coaching style. Respondents claim that petitioner was advised of the existence and effect of rule 13 when his gymnast sons Mark and Christopher desired to participate in an outside event in 1978. In that instance the boys did not compete. Petitioner does not deny personal knowledge of the provisions of rule 13.

On the motion, petitioner argued that no triable issue of

fact existed. Special Term denied the application as a matter of law and ruled that petitioner failed to exhaust available administrative remedies prior to commencing the article 78 proceeding. It found that petitioner was familiar with the eligibility rules, failed to petition the Executive Committee of the Athletic Association for permission to compete in the Reading event and failed to follow the appellate procedures in the Athletic Association's rules. Special Term held that petitioner entered Christopher in the Reading event aware of the possible consequences of the action and that both father and son knowingly violated the rule. We agree with Special Term's result but for different reasons.

██ Although this proceeding relates to a denial of eligibility to a high school student to participate in athletic events already concluded, the issue is not moot since the case is one in which the underlying questions are of general interest, have substantial public importance and are likely to recur *(Matter of Concord Realty Co. v City of New York*, 30 NY2d 308; *Matter of Gold v Lomenzo*, 29 NY2d 468, 475, 476; *Matter of Eichner [Fox]*, 73 AD2d 431, 435). In fact, petitioner claims that the same issue arose again in 1980.

██ An article 78 proceeding is the appropriate remedy to compel private corporations to fulfill obligations imposed upon them by statute as well as by their internal rules *(Matter of Auer v Dressel*, 306 NY 427; *Matter of Weidenfeld v Keppler*, 84 App Div 235, 237-239, affd 176 NY 562; see Siegel, New York Practice, § 558, p 777), including adherence to their own hearing or review procedures *(Matter of Carr v St. John's Univ., N. Y.*, 17 AD2d 632, affd 12 NY2d 802). The general rule is that one must exhaust available administrative remedies prior to seeking relief from a court of law *(Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57; *Young Men's Christian Assn. v Rochester Pure Waters Dist.*, 37 NY2d 371, 375). The Court of Appeals has held, nonetheless, that the exhaustion rule is not inflexible and need not be followed when the action is challenged as either unconstitutional or outside of a grant of power, when resort to an administrative remedy

would be futile or when its pursuit would cause irreparable injury *(Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57, *supra;* cf. *Matter of First Nat. City Bank v City of New York Fin. Admin.,* 36 NY2d 87, 92-93).

■ Petitioner's contentions of a denial of Federal and State due process and State equal protection rights would appear to afford him standing to seek article 78 relief without first exhausting available administrative remedies. However, we find no such denial in this case. It is clear that the due process clause of the Federal Constitution does not protect student's claimed denial of eligibility under his school's athletic association rules since the question is frivolous and not substantial *(Walsh v Louisiana High School Athletic Assn.,* 616 F2d 152, 159 [unsuccessfully challenged existence and enforcement of athletic association rule whereby student lost one year's sport eligibility upon transfer to neighboring district]; *Albach v Odle,* 531 F2d 983 [unsuccessfully challenged transfer rule]; *Mitchell v Louisiana High School Athletic Assn.,* 430 F2d 1155, 1157-1158 [unsuccessfully challenged athletic association's rule making student repeating a grade after the sixth grade ineligible for sports during senior year]; see *Parish v National Collegiate Athletic Assn.,* 506 F2d 1028). Although an athletic association's actions may be deemed State action and cause injury to a student athlete, the Federal due process clause does not protect against every alleged injury at the hands of a State *(Mitchell v Louisiana High School Athletic Assn.,* 430 F2d 1155, 1158, *supra).* Unless athletic association regulations deny an athlete a protected fundamental right or classify him or her on a suspect basis, e.g., religion or race, athletic programs are not subject to Federal review *(Albach v Odle,* 531 F2d 983, *supra;* see *Parish v National Collegiate Athletic Assn., supra,* p 1034). Under the Federal cases, a student's interest in participating in interscholastic sports is a mere expectation *(Walsh v Louisiana High School Athletic Assn., supra,* p 159; *Mitchell v Louisiana High School Athletic Assn., supra).*

Further, petitioner's claim should not receive State constitutional due process protection. As we have previously stated, participation in interscholastic high school competitions is not a substantial right unless denial is based on an

abuse of a student's fundamental rights or predicated on a suspect basis. Assuming, *arguendo*, that the right were one which merits State constitutional protection, petitioner would not succeed in the instant case. Petitioner claims injury to his son's name and reputation because he was declared ineligible without an opportunity for a hearing to clear his name. His argument is tautological, however, since he waived his right to a fact hearing at Special Term, neither presenting proof of harm, if any, nor utilizing the opportunity to purge any alleged stain on his son's name. Also, the Athletic Association's rule, entitled "Appeal Procedure", provides a vehicle to review all questions of eligibility. Petitioner did not at any time avail himself of this procedure and, accordingly, he was not denied a forum to have the question of his son's eligibility reviewed.

█ Nor has petitioner been denied his State constitutional right of equal protection. Petitioner waived his right to a hearing and submitted no proof that there is no rational basis for the exemption of some sports from the application of rule 13 except a bald speculation in his affidavit that "probably more schools have ski teams" than gymnastic teams. It is clear from the record, however, that the classifications in rule 13 are neither inherently suspect nor a violation of a fundamental right, but rather are grounded in and reasonably related to legitimate State interests. The record shows that certain sports are exempt from the application of the rule in order to expand an otherwise limited opportunity for competition and afford students a greater chance to participate in them, and to eliminate sports whose skills or nature lend to parent-child participation and do not involve daily practice. It is also important to note that the classifications under rule 13 are not static and have evolved over the last number of years as circumstances developed in an effort to meet the legitimate purposes offered for the rule (see *Mitchell v Louisiana High School Athletic Assn.*, 430 F2d 1155, *supra*). Again, were it decided that rule 13 invidiously discriminates, petitioner would nonetheless be without relief since he waived his right to a factual hearing and offered no proof to support his claims; and, therefore, no question of fact was raised to resist respondents' demand for judgment dismissing the petition.

█ Petitioner's contention that respondent's determination violates CPLR 7803 (subd 3) is also unfounded. Article 78 relief may not be predicated on this ground since there is no showing that the Athletic Association violated lawful procedure, was affected by an error of law, acted arbitrarily and capriciously, abused its discretion or inflicted an unwarranted measure or mode of penalty. Petitioner conceded that his son participated in outside competition, a violation of rule 13, which prescribes a loss of eligibility. No hearing was required on the part of respondents to find either a violation of the rule or fix a sanction: the rule is unambiguous and speaks for itself. Whether respondents' action is "arbitrary and capricious" relates to whether or not the agency's action has a sound basis in reason and has a foundation in fact *(Matter of Pell v Board of Educ.*, 34 NY2d 222, 231; Siegel, New York Practice, § 561, p 785). The test is whether there is a rational basis for respondents' action *(Matter of Pell v Board of Educ., supra,* p 231; *Matter of Colton v Berman,* 21 NY2d 322, 329). Here, respondents could only act in the one way in which they did; rule 13 mandates ineligibility for its violation and upon Christopher's violation he was declared ineligible. Respondents' actions did not involve the use of discretion since the action taken by respondents fell within the parameters of the rule so that under no such test could a declaration of ineligibility become an abuse of discretion (cf. *Robin v New York State Public High School Athletic Assn.,* 71 AD2d 1009).

The courts should not interfere with the internal affairs, proceedings, rules and orders of a high school athletic association unless there is evidence of acts which are arbitrary, capricious or an abuse of discretion *(David v Louisiana High School Athletic Assn.,* 244 So 2d 292 [La]; *Scott v Kilpatrick,* 286 Ala 129; *Robinson v Illinois High School Assn.,* 45 Ill App 2d 277, cert den 379 US 960; *Morrison v Roberts,* 183 Okla 359; see, generally, *Robin v New York State Public High School Athletic Assn.,* 71 AD2d 1009, *supra* [lack of proof that student had actual or constructive notice of ineligibility rule]). Any declaration of ineligibility by the Athletic Association in violation of its own rules would subject that action to judicial scrutiny (see *Tedeschi*

*v Wagner Coll.*, 49 NY2d 652; *Matter of Olsson v Board of Higher Educ.*, 49 NY2d 408; *Matter of Gray v Canisius Coll. of Buffalo*, 76 AD2d 30). The Athletic Association adhered to its rules. It was the petitioner's violation of the rules which resulted in Christopher's ineligibility.

■ Petitioner's claim that the Athletic Association is without jurisdiction has no merit. The Athletic Association controls certain interscholastic sport competitions. If petitioner's son wishes to participate in those events, then he comes under the jurisdiction of the Athletic Association. He has no independent inherent right to participate otherwise.

Accordingly, the judgment should be affirmed for the reasons stated herein.

CARDAMONE, J. P., SIMONS, DOERR and WITMER, JJ., concur.

Judgment unanimously affirmed, without costs.