OPINION OF THE COURT
Nancy E. Smith, J.
The petitioner has brought this action seeking the court to review an order of the Fire Chief of the City of Rochester issued on November 14, 1997. The petitioner requests a ruling from the court vacating the Chiefs order. The Chiefs order has *978 been temporarily enjoined by an order to show cause signed and issued by the court on November 25, 1997. The respondents answered on December 11, 1997 seeking dismissal of this CPLR article 78 proceeding or, in the alternative, summary judgment.
The pertinent facts are as follows: On November 14, 1997 the City of Rochester Fire Chief David Griffith issued an order to “All Staions [sic] and Divisions” ordering all firefighters to “patrol the streets in the district from 6:00 a.m. until 8:00 a.m. on school days only”. The purpose of the patrolling would be to serve as “an extra set of eyes” for the Rochester Police Department in an effort to combat the recent rash of rapes of school children in Rochester. In the event that firefighters observed something suspicious they were directed not to intervene in any fashion, but to notify their dispatcher immediately. This order was scheduled to remain in effect until January 1, 1998.
On November 18, 1997 the petitioner filed a grievance notifying Chief Griffith that it was the Union’s position that this order was tantamount to changing its members’ work rules, thus violating the collective bargaining agreement. The petitioner thus triggered the arbitration procedure outlined in article 27, § 2 of the collective bargaining agreement.
The petitioner seeks relief here because, in the event the grievance procedure runs its course, the process itself will outlast the duration of the order. The Union argues that they have no other remedy but to come before the court seeking relief.
The respondents answer by stating that this order is within the authority vested in the Fire Chief by the Rochester City Charter. In presenting its argument, the respondents cite to the court instances when firefighters have performed duties such as looking for vacant buildings and assisting crews during the Ice Storm of 1991. Those situations can be distinguished from the present one in that those related to either direct firefighting duties or occurred during declared states of emergency, neither of which is present here.
In reviewing the arguments presented, the key issue is whether there has been an exhaustion of administrative remedies as required by CPLR 7801 (1) which would then confer jurisdiction on this court. In this case it is clear that the administrative remedy has not been exhausted, therefore, in order for the court to act as petitioner wishes, this situation must fit within the prescribed exceptions. The court must examine three factors in order to determine whether an excep *979 tion exists. These factors are whether there will be irreparable harm to the moving party in the absence of prompt judicial intervention, whether there is a proper claim of unconstitutional action and whether it is futile to pursue the administrative remedy. The Appellate Division, Fourth Department, has already held that the exhaustion rule is not inflexible. (Matter of Caso v New York State Pub. High School Athletic Assn., 78 AD2d 41 [4th Dept 1980].) It need not be followed when the action is challenged as either unconstitutional or outside a grant of power, or when resort to an administrative remedy would be futile or when its pursuit would cause irreparable injury. (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978].)
In exercising the discretion allowed to this court, it is the court’s determination that it is proper to assume jurisdiction over this action. Further, the court finds that the petitioner has established sufficient reasons for this court to determine that this action satisfies the requirements needed to review it as a case which is an exception to the finality doctrine.
The court understands that the respondent’s intentions were noble and intended to protect children. As stated, he simply asked the firefighters to be on the lookout for suspicious characters. The firefighters were not to take affirmative action other than calling the dispatcher. It is doubtful that the firefighters faced a threat of physical harm. The court, however, determines that requiring these “patrols” is beyond the Chiefs authority as granted under the Rochester’s City Charter. These “patrols” cannot be seen in any way as being “incidental or necessary to the protection of life and property during fires and other emergencies” as the Charter dictates.
It is therefore the decision of the court that the petitioner’s request is granted and the court vacates Fire Chief Griffith’s order of November 14, 1997. The court denies the respondents’ motion to dismiss this action and their application for summary judgment.