OPINION OF THE COURT
Kenneth R. Fisher, J.
Petitioners, who are students at John Marshall High School and former students of Aquinas Institute, both in the City of Rochester, instituted this CPLR article 78 proceeding seeking to vacate the decision of Section V of the New York State Public High School Athletic Association, Inc., and the appeal determination of the New York State Public High School Athletic Association, declaring petitioners ineligible to play football during their senior season at John Marshall, by reason of respondents’ Bylaw and Eligibility Standard rule 29, on the ground that petitioners transferred from Aquinas to John Marshall without changing their residence. Rule 29, adopted by the New York State Public High School Athletic Association, Inc. (NYSPHSAA), provides, with four limited exceptions not relevant here, that “[a] student who transfers without a corresponding change in residence of his/her parents * * * is ineligible to participate in any interscholastic athletic contest in a particular sport for a period of one (1) year if the student participated in that sport during the one (1) year period immediately preceding his/her transfer.”
Petitioners contend that the rule was adopted by NYSPHSAA in violation of duly promulgated New York State Department of Education regulations which, among other things, prescribe that “[a] pupil shall be eligible for senior high school competition in a sport during each of four consecutive seasons of such sport commencing with the pupil’s entry into the ninth grade.” (8 NYCRR 135.4 [c] [7] [ii] [b] [1].) Petitioners further contend that Education Department regulations (described below), and indeed NYSPHSAA’s Constitution, require that policies, rules and regulations for interscholastic sports, whether adopted by NYSPHSAA or its various sections, including Section V, be consistent with Education Department regulations and applicable law, and in particular the four-year eligibility mandate.
Petitioners make a second claim. Although rule 29 traditionally and even now (the text of the rule has not changed) provided for the opportunity of “each school * * * to petition the section involved to approve transfer without penalty based on an undue hardship for the student” (rule 29, last sentence), respondent Section V passed a referendum in May of 2000, *626 distributed in December 2000, which effectively eliminated “undue hardship” petitions. Respondents relied at least in part on the referendum in denying petitioners’ appeals. Petitioners contend that the referendum is itself arbitrary and capricious, as contrary to the undue hardship relief valve built into rule 29.
Procedural Background
The initiatory papers were presented to the undersigned on Wednesday, October 3, 2001, at approximately 4:00 p.m., together with an application for a temporary restraining order (TRO) which would have had the effect of permitting petitioners to compete in last Saturday’s high school football game. Notice was given to respondents of the application for the TRO, and oral argument by telephone conference was held Thursday morning, October 4, 2001. By decision and order dated October 4, 2001, petitioners’ motion for a temporary restraining order was denied on the ground that “immediate and irreparable injury” (emphasis supplied) within the meaning of CPLR 6301 and 6313 (a) would not occur before a hearing on the motion for a preliminary injunction could be held. The order to show cause bringing on the petition also was signed on October 4th setting the hearing, and indeed the return of the petition itself, on Wednesday, October 10, 2001, at 10:00 a.m. Respondents filed the return, and responded to the motion for a preliminary injunction, and oral argument was held. The parties agreed that no evidentiary hearing was necessary and that decision on the petition could be rendered without disposition of the motion for a preliminary injunction. The following constitutes a decision and order dismissing the motion for a preliminary injunction as moot, and granting the petition, permanently enjoining respondents from enforcing rule 29, and enjoining them to declare petitioners eligible for football competition this fall.[1]
*627 Factual Background
Until now, petitioners Lome D. Brooks and Justin Allen have, throughout their high school careers, attended the Aquinas Institute, a private parochial school in the City of Rochester. They were members of the Aquinas football team each of the years in which they attended Aquinas. Justin Allen was scouted last year by Edinboro University, a Division II college in Pennsylvania, for scholarship purposes. After completion of the fall 2000 football season, however, petitioners suffered academic reverses, and were told that they would not be permitted to return to Aquinas for their senior year beginning this fall. Petitioners registered for admission in the Rochester City School District and were assigned by that District to John Marshall High School, where they now attend.
Petitioners contend, without contradiction, that they were not recruited by John Marshall, that they did not transfer for athletic purposes, and that their departure from Aquinas was wholly involuntary. Aware of rule 29, administrators at John Marshall sought a rule 29 waiver from respondents on the ground of undue hardship. They alleged in the administrative proceeding that they were academically eligible to participate in the football program, and they now allege, with supporting documentation and without contradiction by respondents, that they are students in good standing eligible to play football but for respondents’ interpretation of rule 29. (See 8 NYCRR 135.4 [c] [7] [ii] [b] [2] [“(a) pupil shall be eligible for interschool competition in a sport during a semester, provided that he is a bona fide student, enrolled during the first 15 school days of such semester, is registered in the equivalent of three regular courses, is meeting the physical education requirement, and has been in regular attendance 80 percent of the school time”].)
Respondent Section V denied John Marshall’s request for a waiver on behalf of the student petitioners in letters to the John Marshall Athletic Director, Frank Muritori, dated August 24, 2001 (Allen) and August 31, 2001 (Brooks). Section V reasoned in Allen’s case that Allen’s departure from Aquinas by reason of poor academic performance at Aquinas should be carried over to the new school year. The reasoning in Brooks’ case was explicitly based on the year 2000 referendum restricting rule 29 waiver applications to the four exceptions contained in the rule itself. John Marshall promptly appealed on behalf *628 of the petitioners, contending that the reasons for petitioners’ removal from Aquinas did not affect their academic eligibility to participate, that the petitioners met all City School District eligibility requirements, and that in any event their academic situation at Aquinas was “not under the jurisdiction of Section V.” Section V substantially clarified in a letter dated September 12, 2001, that its decision in regard to both Brooks and Allen was based on the “failure on the part of both boys to meet academic standards at Aquinas resulting in their respective dismissals from Aquinas [which] was not a compelling argument that could result in awarding academic eligibility.” This letter was delivered while the appeal was pending.
In a written decision dated September 24, 2001, a NYSPHSAA appeals panel denied the appeals of both petitioners. NYSPHSAA based its decision solely on rule 29, finding that neither student qualified for one of the four stated exemptions to the transfer rule and that none produced “any evidence * * * that there exists an ‘undue hardship.’ ” In regard to the latter, the decision of NYSPHSAA relied exclusively on petitioners’ poor academic performance at Aquinas in concluding that no undue hardship had been established.
Petitioners promptly commenced this article 78 proceeding, both in the nature of mandamus, and in the nature of certiorari, to annul respondents’ decisions as arbitrary, capricious, and infected by a fatal error of law.
Discussion
Petitioners’ primary attack is on the lawfulness of rule 29 under the Commissioner’s regulations. Rule 29 plainly conflicts with 8 NYCRR 135.4 (c) (7) (ii) (b) (1), first in that it deals with eligibility issues at all, and second in that it qualifies or modifies the athletic competition eligibility mandate promulgated by the Commissioner. The court agrees with both contentions. The regulation prescribes that “[a] pupil shall be eligible * * * during each of four consecutive seasons * * * commencing with the pupil’s entry into the ninth grade and prior to graduation, except as otherwise provided in this subclause.” (Id. [emphasis supplied].) None of the other provisions of the subclause providing exceptions are invoked in this case, although they each cover eligibility criteria concerns that are in a class which would include concerns like those addressed in rule 29. Rule 29, therefore, is an extra-regulatory exception to the four-year eligibility mandate. The regulations permit respondents to create “additional rules” but such rules must be “consistent with *629 this basic code” and they must “relat[e] to items not covered specifically in this code,” i.e., the part 135 regulations. (8 NYCRR 135.4 [c] [7] [i] [a] [emphasis supplied].) Eligibility criteria are, manifestly, covered in quite specific fashion throughout the Commissioner’s regulatory scheme.
The Legislature gave to the Board of Regents and the Commissioner the power to adopt regulations such as these. (See Education Law §§ 207, 305; Pratt v New York State Pub. High School Athletic Assn., 133 Misc 2d 679, 682 [Sup Ct, Nassau County 1986].) Duly adopted and promulgated regulations, if reasonable, have the force and effect of law. (People ex rel. Jordon v Martin, 152 NY 311, 316-317 [1897]; Matter of Adam S., 285 AD2d 175 [2d Dept 2001]; cf., Moore v Board of Regents, 44 NY2d 593, 602 [1978].) These departmental regulations apply to “[a]thletic participation in all schools” (8 NYCRR 135.4 [c] [7] [preamble]), and the regulations insist that all athletic programs within the state “shall be planned so as to conform to the * * * Part [135 regulations]” including, of course, the four-year pupil eligibility mandate. (Id. § 135.4 [c] [7] [i] [a].) Accordingly, rule 29 violates clearly established law, first simply by dealing with a subject, student eligibility, specifically covered in the part 135 regulations, and second by restricting or suspending the applicability of the four-year eligibility mandate. It is an “additional rul[e] [not] consistent with this basic code” (8 NYCRR 135.4 [c] [7] [i] [a]), particularly inasmuch as the Code expressly preserves to a student his or her eligibility status for “each” of the indicated four years, excepting only the enumerated situations prescribed by section 135.4 (c) (7) (ii) (b) (1).
Respondents contend that rule 29 is within NYSPHSAA’s broad rule-making authority under section 135.4 (c) (7) (i) (a), as interpreted in Matter of Eastern N. Y. Youth Soccer Assn. v New York State Pub. High School Athletic Assn. (67 NY2d 665, 667 [1986]). That case upheld a rule prohibiting, under threat of loss of eligibility, a student’s participation in nonschool sports competition once a student, in any school year, first participated in an interscholastic contest. But the area of non-school sports competition was not “specifically covered” in the part 135 regulations insofar as it did not concern eligibility standards, and thus became a fair subject for additional rule-making, in the form of a ban on outside competition, under section 135.4 (c) (7) (i) (a). Insofar as the regulation at issue in Eastern N. Y. Soccer affected eligibility determinations, it was, as the Court found, directly related to legitimate concerns for *630 the health of the student, a matter clearly within respondents’ broad authority to promulgate “additional rules” consistent with the pertinent student health and welfare related provisions of the part 135 regulations, which either expressly or by necessary implication affect eligibility status. (108 AD2d 39, 41 [3d Dept 1985], affd 67 NY2d at 667; see, e.g., 8 NYCRR 135.4 [c] [7] [i] [d]-[i].) Most important, however, the part 135 regulations clearly permit respondents to adopt an outside competition ban for post-season play (id. § 135.4 [c] [7] [i] [m]), and they arguably permit respondents to prohibit collateral in-season play. (Id. § 135.4 [c] [7] [i] [n]-[o].)
By contrast, in this case, the four-year eligibility mandate preempts respondents’ assertion of authority to delimit the same for antirecruitment purposes. The subject of interscholastic fair competition, and eligibility for the same, is “specifically covered” in the part 135 regulations, indeed it permeates the entire regulatory scheme. Where a subject is “specifically covered,” respondents are preempted from adopting an additional rule on the subject unless wholly consistent with the regulatory scheme, and in particular the four-year eligibility mandate. (Cf., in another context, Matter of Rush-Henrietta Cent. School Dist. v Newman, 151 AD2d 1001, 1002 [4th Dept 1989].) Rule 29 cannot be squared with the four-year eligibility prescription.
There is a weighty reason for the eligibility mandate, as the John Marshall principal cogently argued in his memorandum to Section V supporting petitioners’ waiver petitions. The only true supporting rationale for rule 29, as respondents virtually conceded at oral argument, is the prevention of adventuresome and otherwise unseemly recruitment practices among secondary schools, and the precipitious effects of a student disrupting his or her educational program at a school to jump ship to another team for athletic purposes. Rule 29, however, penalizes the student for the sins of those athletic directors and coaches who engage in recruiting, on the one hand, or the student who transfers for an entirely “innocent” reason, on the other hand, and, therefore, it is in many cases misdirected. Indeed, it was pointed out in case law long ago that the rule “sweep [s] too broadly * * * [by] creating] an over-inclusive class — those who move from one school to another for reasons wholly unrelated to athletics are grouped together with those who have been recruited or who have ‘jumped’ for athletic reasons.” (Sturrup v Mahan, 261 Ind 463, 468-469, 305 NE2d 877, 881 [1974].) By “severely limit [ing] the transferee eligibility in general,” the *631 transfer rule “penalize [s] a student-athlete who * * * transferís] for academic or religious reasons or for any number of other legitimate reasons,” and applying the rule in such cases by “denying eligibility to such transferees in no way furthers [state athletic association] objectives.” (Id. at 469, at 881.) While it is true that the above-quoted observation, of the practical effect of the transfer rule, came in the course of an opinion which applied the overbreath finding to an equal protection claim not involving a suspect classification, a mode of equal protection analysis since thoroughly discredited, even by the court that made the observation (Indiana High School Athletic Assn. v Carlberg, 694 NE2d 222, 237-239 [Ind 1998]), that fact does not impugn the purely factual conclusion that the practical reach of the rule goes well beyond true recruitment or athletic motivated transfer cases the rule was designed to prevent.
We do not have the benefit of the Commissioner’s stated rationale for promulgating a four-year eligibility mandate with limited exceptions for academic performance or health and welfare related criteria. The Commissioner did not include a justification statement with the promulgation of that regulation. But it is no leap of imagination to conclude that the Commissioner intended to promulgate the four-year eligibility mandate as a means to prevent respondents from enacting rules furthering otherwise legitimate objectives but which have an overbroad reach on eligibility determinations and thus disadvantage “innocent” students. Another intended effect of the regulatory scheme is to preserve to the Commissioner, and as against respondents, significant rule-making power in the area of student eligibility. The obvious overbroad impact of rule 29, exemplified by its application to these petitioners, conflicts with the regulatory scheme to delimit restrictions on eligibility to academic performance or health and welfare criteria. The fact that the Commissioner chose to promulgate a four-year eligibility mandate can only be seen as the device to protect affected students from suffering ineligibility by reason of actions of school or athletic association administrators outside the prescribed regulatory eligibility scheme.[2]
The improper conduct of athletic directors and coaches in recruitment as between schools was not covered in the regula *632 tions, and therefore would be the proper subject of “additional” rulemaking by respondents under subdivision (c) (7) (i) (a), but only if the additional rule preserved the four-year eligibility mandate (and thus was consistent with it). Under this view, respondents would be free to adopt rules directly banning recruiting or transfers motivated by athletic concerns. Indeed, such rules could provide for discipline of coaches and athletic directors who engage in recruiting. Such measures would be consistent with the Department’s pupil eligibility regulation so long as it did not compromise the four-year eligibility mandate. In other words, rule 29 plainly conflicts with the evident purpose of the four-year eligibility rule to insulate the pupil from noneligibility determinations based on nonacademic or nonhealth and welfare related criteria or decision making of school or section officials.
Respondents also contend that rule 29 has been upheld against challenge by the Commissioner, and that these decisions are entitled to deference. They point to two appeal determinations by the Commissioner, appeal No. 14107 (Apr. 7, 1999) and appeal No. 14574 (May 9, 2001). The decision in No. 14107 is problematic, because it contains a statement upholding rule 29 against a challenge that it conflicts with the four-year eligibility mandate, but the two reasons proffered in support of the statement have nothing to do with the challenge made. Reference is made to the outside competition rule upheld in Eastern N. Y. Youth Soccer, which for reasons stated above does not support respondents’ position here. Reference is *633 also made to the various court decisions upholding duly-promulgated and otherwise lawful transfer rules as against constitutional challenges, which for reasons stated above (see n 2, supra), have no application to the decision whether respondents’ rule-making conflicts with the Commissioner’s regulatory scheme. In any event, the determination in No. 14107 cannot support respondents’ position if the Commissioner’s decision in No. 14574 is given any credence. In that appeal, the student transferred from a parochial school to a public school outside her district of residence. The Commissioner upheld application of rule 29 to the student’s circumstances, but distinguished the situation from one involving a transfer to a public school within the student’s district of residence: “If Rebecca transferred to a school within her district, she would have been eligible to play basketball” (emphasis supplied). As petitioners contend, they stand in no different position than the hypothesized student Rebecca in No. 14574. Accordingly, there is no determination of the Commissioner on facts like these which must be accorded deference in favor of respondents. If anything, the Commissioner’s observation in No. 14574 supports petitioners here.
Conclusion
An article 78 proceeding lies to challenge respondents’ declaration of ineligibility in violation of the Commissioner’s regulations. (Section VI v New York State Pub. High School Athletic Assn., 134 AD2d at 820; Matter of Caso v New York State Pub. High School Athletic Assn., 78 AD2d at 48, 48-49.) Respondents are enjoined by regulations having the force and effect of statute to accord petitioners eligibility for football competition this fall. They are hereby ordered to do so. (CPLR 7803 [1].) In the alternative, respondents’ determination to declare petitioners ineligible is hereby vacated, set aside, and annulled, on the ground that it was infected with a fatal error of law. (CPLR 7803 [3].) This determination renders it unnecessary to reach petitioners’ further alternative claim that Section V’s 2000 referendum, upon which the appeals panel relied in making its determination in these cases, is arbitrary and capricious because it is at variance with the last paragraph of rule 29.

. Respondents’ exhaustion of administrative remedies defense is without merit. Petitioners waited until the NYSPHSAA appeals panel rendered its decision before instituting this proceeding. NYSPHSAA’s handbook declares that the appeals panel decision “shall be the final administrative appeal through the NYSPHSAA, Inc., and shall be final.” (2000-2002 Handbook, at 57.) Although the handbook refers to a possible legal action in the courts or an appeal before the Commissioner, respondents could not point to any provision of the handbook, or departmental regulation, which requires the bringing of a further appeal to the Commissioner, or which otherwise would render the appeals panel decision nonfinal. Accordingly, petitioners have exhausted *627 administrative remedies, if indeed they have to. (Matter of Caso v New York State Pub. High School Athletic Assn., 78 AD2d 41, 45-46 [4th Dept 1980].)

. While it is not the practice of the courts to second-guess school or athletic program administrators on the means to achieve an otherwise lawful objective if those means are rational and related to the lawful objective ([Matter of Community School Bd. Nine v Crew, 224 AD2d 8, 13 [1st Dept 1996]; Section VI v New York State Pub. High School Athletic Assn., 134 AD2d *632 819, 820 [4th Dept 1987]; Matter of Caso v New York State Pub. High School Athletic Assn., 78 AD2d 41, 48, 48-49 [4th Dept 1980]), and while transfer rules such as this one are commonly upheld against constitutional challenges on the ground that they are rationally related to a proper objective of preventing objectionable interschool recruiting (United States ex rel. Missouri State High School Activities Assn., 682 F2d 147, 151-152 [8th Cir 1982] [collecting cases]; Walsh v Louisiana High School Athletic Assn., 616 F2d 152, 158-159 [5th Cir 1980]; Annotation, Validity of Regulation of Athletic Eligibility of Students Voluntarily Transferring From One School to Another, 15 ALR4th 885 [1982]), in these cases, the transfer rules upheld were duly promulgated and in accord with applicable state law. In this case, it is the very question of lawful adoption according to state law that is in issue. The constitutional cases have no application here. The point is that the Commissioner was entitled to consider the overbreath issue when promulgating the four-year eligibility mandate, even though a court would not be entitled to consider overbreath analysis in resolving a constitutional claim. Furthermore, the cited cases would support the power of the Commissioner himself to alter the present regulatory scheme by promulgating some variant of a transfer rule as part of the Department’s regulations. (See also, Indiana High School Athletic Assn. v Carlberg, supra.)