867 So.2d 1281 (2004)
FLORIDA HIGH SCHOOL ATHLETIC ASSOCIATION, Appellant,
v.
MELBOURNE CENTRAL CATHOLIC HIGH SCHOOL, et al., Appellee.
No. 5D03-3437.
District Court of Appeal of Florida, Fifth District.
March 26, 2004.
*1284 Leonard E. Ireland, Jr. and Jennifer R. Williams of Clayton-Johnston, P. A., Gainesville, for Appellant.
Douglas D. Marks of Boyd & Marks, L.L.C., Melbourne, for Appellee.
ORFINGER, J.
The Florida High School Athletic Association (FHSAA) appeals the entry of a temporary injunction prohibiting it from enforcing its decision that Robert Morris, a student at Melbourne Central Catholic High School (MCC), was ineligible to represent MCC in interscholastic sports during the 2003-2004 school year. We have jurisdiction. See Fla. R.App. P. 9.130(a). For the reasons that follow, we reverse.

BACKGROUND
The FHSAA, a non-profit corporation, is designated by statute to regulate high school athletic programs in member schools. See § 1006.20, Fla. Stat. (2003).[1] Organized under the laws of Florida, FHSAA is a voluntary, not-for-profit corporation comprised of members, including public, private, parochial and institutional schools in Florida. As required by law, FHSAA, acting through its member schools, adopts rules regarding eligibility and similar matters related to interscholastic athletic competition.
Robert Morris attended MCC during his sophomore year of high school and for the first semester of his junior year. Morris performed well academically, played football, and was considered a player with talents sufficient to be considered for a college football scholarship. Following the conclusion of the first semester of his junior year, Morris transferred to Palm Bay High School. Upon transferring, Morris was told by MCC officials that he was free to return to MCC if things did not work out for him at Palm Bay.
During the summer of 2003, Morris attended a football camp at the University of Florida. Tim Lester, a coach at the camp, had recently agreed to coach football at MCC for the upcoming season. Lester testified that he had never been to MCC and did not know who Morris was. Nevertheless, Lester and Morris had contact with each other during the camp, confined solely, according to Lester, to a discussion regarding Lester's NFL career. However, when school began again in the Fall of *1285 2003, Morris withdrew from Palm Bay and returned to MCC.
FHSAA has promulgated rules which prohibit the recruiting of students for athletic purposes. Based on a belief that a rule violation may have occurred, FHSAA began an investigation of MCC regarding alleged recruiting violations. On August 6, 2003, FHSAA notified MCC of alleged recruiting violations and requested a response.[2] On August 12, 2003, MCC responded to FHSAA's request, and on August 20, 2003, after considering MCC's response, FHSAA ruled that Morris was ineligible to represent MCC in interscholastic sports for a period of one year.
FHSAA relied primarily on FHSAA bylaw 11.4.12 in establishing that Morris had been recruited by Lester. FHSAA bylaw 11.4.12 raises a presumption of recruiting, and provides, in pertinent part:
Participation by a student in non-school athletics (i.e. AAU, American Legion, club settings, etc.) on a team that is affiliated with any school other than the school which the student attends, or attended the prior year, followed by enrollment by that student in the affiliated school shall be considered prima facie evidence of recruiting by the school to which that student enrolled, or that the student enrolled in that school in whole or in part for athletic reasons.... A team affiliated with the school is one that is organized by and/or coached by any member of the coaching staff at, or any other person affiliated with, that school; and/or on which the majority of the members of the team (participants in practice and/or competition) are students who attend that school.
Pursuant to the appeals process set out in section 1006.20(7)(a)[3] and FHSAA bylaws, MCC and Morris appealed the ineligibility ruling to FHSAA's sectional appeals committee. On September 11, 2003, the sectional appeals committee denied the appeal. MCC and Morris were advised that they had a right to appeal the sectional appeals committee's denial to the FHSAA Board of Directors at its next scheduled meeting on September 28, 2003. MCC and Morris elected not to follow the appeals process required by section 1006.20(7)(e) and FHSAA bylaws, and, instead, filed the instant action in the circuit court, seeking a temporary injunction restoring Morris's eligibility.
FHSAA moved to dismiss the circuit court action, contending that MCC and Morris had failed to exhaust the available administrative remedies. On October 13, 2003, a hearing was held on Morris's motion for temporary injunction and on FHSAA's motion to dismiss. Several days later, the circuit court entered a temporary injunction, restoring Morris's eligibility and enjoining FHSAA from enforcing its decision that Morris was ineligible to represent MCC in interscholastic athletic competition for the 2003-2004 school year. This appeal followed.

ANALYSIS
"A temporary injunction is an extraordinary and drastic remedy which should be sparingly granted." Cordis *1286 Corp. v. Prooslin, 482 So.2d 486, 489 (Fla. 3d DCA 1986). Generally, a party seeking a temporary injunction must establish: (1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent; and (4) that the granting of a temporary injunction will not harm the public interest. Id. at 489-90.
As a general rule, one seeking judicial review of administrative action must first exhaust such administrative remedies as are available and adequate to afford the relief sought. A reviewing court may not entertain a suit when the complaining party has not exhausted available administrative remedies. Orange County, Fla. v. Game & Fresh Water Fish Comm'n, 397 So.2d 411 (Fla. 5th DCA 1981). The doctrine of exhaustion of administrative remedies is based on the need to avoid prematurely interrupting the administrative process, and to enable the agency or association to apply its discretion and expertise in the first instance to technical subject matter. Baillie v. Dep't of Nat. Res., Div. of Beaches & Shores, 632 So.2d 1114 (Fla. 1st DCA 1994). The exhaustion doctrine promotes judicial efficiency by giving the agency or association an opportunity to correct its own mistakes, thereby mooting controversies and eliminating the need for court intervention. DeCarlo v. Town of West Miami, 49 So.2d 596 (Fla.1950).
In its order, the circuit court made the following findings:
1. The Defendant's Motion to Dismiss Plaintiff's Complaint is premised upon the doctrine of exhaustion of administrative remedies. The general rule is that a plaintiff must exhaust administrative remedies. An issue exists in this case as to whether the Plaintiff is subject to this rule in connection with the Defendant Florida High School Athletic Association. There are no cases directly on point on this issue. However, the court need not address this issue as the Supreme Court of Florida has stated in Flo-Sun, Inc. v. Kirk, 783 So.2d 1029 (Fla.2001), in discussing the doctrines of exhaustion of administrative remedies and primary jurisdiction, that some agency errors are so egregious and devastating as to render administrative remedies too little, too late. In Lewis Oil Company, Inc. v. Alachua County, 496 So.2d 184 (Fla. 1st DCA 1986) the court stated that administrative remedies must be both available and adequate.
2. The court finds that even if the doctrine of administrative remedies were applicable to the Plaintiff the administrative remedies afforded to him were futile based upon the following findings:
a) The only thing that matters to Plaintiff Morris is his ability to play in ten football games.
b) By the time the first hearing was afforded him on September 11, 2003 three football games had been played.
c) The September 11, 2003[sic] was not focused on Morris and this procedure was inappropriate denying him an adequate remedy. This is especially true since the other recruiting violations focused on at the September 11, 2003 hearing were determined by the Defendant to be unfounded.
d) The appeal of the September 11, 2003 hearing to the Board of Directors of the FHSAA was not until September 28, 2003. By this time five football games had been played. Plaintiffs did not pursue this appeal.

*1287 e) While Defendant contends that this appeal is still available to the Plaintiffs, this appeal would not be heard until; two weeks after the football season had ended.
f) At the time of the hearing on this matter there were four football games remaining to be played.
g) The court will take judicial notice that it took the Plaintiffs thirty (30) days to get a hearing on their motion for temporary injunction.[4]
3. The Defendants next argue that for the court to grant the relief sought by the Plaintiffs the court would be impermissibly interfering in the affairs of a private organization. The cases of Florida Youth Soccer Association v. Sumner, 528 So.2d 4 (Fla. 5th DCA 1988); Florida High School Activities Association v. Bradshaw, 369 So.2d 398 (Fla. 2d DCA 1979) and Suit v. Gilbert, 148 Fla. 31, 3 So.2d 729 (1941) involved no constitutional issues. In Lee v. Florida High School Activities Assoc., 291 So.2d 636 (Fla. 3d DCA 1974) the court found that the Association's conduct is state action subject to the requirements of due process. The court finds that this constitutional standard has been violated for the same reasons articulated in paragraph 2 of this order.
4. On the basis of the foregoing, the Defendant's Motion to Dismiss Plaintiff's Complaint be and the same is hereby denied.
Both section 1006.20 and FHSAA bylaws provide a two-tier appeals process on rulings regarding a student athlete's eligibility to participate in interscholastic activities. Section 1006.20(7) provides:
(a) The organization shall establish a procedure of due process which ensures each student the opportunity to appeal an unfavorable ruling with regard to his or her eligibility to compete. The initial appeal shall be made to a committee on appeals within the administrative region in which the student lives. The organization's bylaws shall establish the number, size, and composition of the committee on appeals.
(b) No member of the board of directors is eligible to serve on the committee on appeals.
* * *
(e) A student athlete or member school that receives an unfavorable ruling from a committee on appeals shall be entitled to appeal that decision to the board of directors at its next regularly scheduled meeting or called meeting. The board of directors shall have the authority to uphold, reverse, or amend the decision of the committee on appeals. In all such cases, the decision of the board of directors shall be final.
MCC and Morris contend that the doctrine of exhaustion of administrative remedies is inapplicable because FHSAA is not a state agency, as defined in section 120.52, Florida Statutes. While we agree that FHSAA is not a Chapter 120 agency,[5] we disagree with the contention that the exhaustion doctrine is inapplicable.
Generally, the exhaustion doctrine applies not only to state agencies, but also to voluntary associations. Westlake Cmty. Hosp. v. Superior Court, 17 Cal.3d 465, 131 Cal.Rptr. 90, 551 P.2d 410 (1976); *1288 Trustees of Cal. State Univ. & Colleges v. Nat'l Collegiate Athletic Ass'n, 82 Cal. App.3d 461, 147 Cal.Rptr. 187 (Cal.Ct.App. 1978). Under the common law, associations may require their members to exhaust all internal remedies within the association before resorting to any court or tribunal outside of the association. As a general rule, when a private organization has procedures for internal review of its decisions, those procedures must be exhausted before seeking redress from a court. 6 Am.Jur.2d Associations and Clubs § 30 (1999). Only under exceptional circumstances will a court intervene without the aggrieved party having exhausted the organization's remedies. Such circumstances may be found to exist where the proceedings are not conducted in accordance with the rules, but contrary to law, or where a resort to the internal remedies would be a useless undertaking, would be meaningless or would subject the complainant to unreasonable delay or hardship. Id. When a method of appeal from an administrative ruling has been provided, such method must generally be followed to the exclusion of any other system of review. When an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act. Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla.1961); City of Coral Gables v. Sakolsky, 215 So.2d 329 (Fla. 3d DCA 1968).
In an alternative argument, MCC and Morris contended in their complaint that FHSAA's actions violated both their state and federal due process rights.[6] In its order, the trial court found no constitutional violations; rather, it reweighed the evidence considered by the FHSAA appeals committee and reached an opposite conclusion. That was improper. Inferentially, the trial court identified a possible protectable interest in Morris's potential for an athletic scholarship. However the possibility of a scholarship is not a protectable property interest. See Indiana High Sch. Athletic Ass'n v. Carlberg, 694 N.E.2d 222, 241 (1998). See also Schaill v. Tippecanoe County Sch. Corp., 679 F.Supp. 833, 855 (N.D.Ind.1988) ("[S]tudent's aspirations for a college scholarship from high school sports ... do not establish any legally protected interests."), aff'd, 864 F.2d 1309 (7th Cir.1988).[7] Assuming that MCC and Morris were entitled to due process, there is no evidence that they were denied the procedure that was due.
At first blush, the contentions by Morris and MCC that they were denied federal and state due process argue in favor of allowing court intervention without first exhausting available administrative remedies. Caso v. N.Y. State Public High Sch. Athletic Ass'n, Inc., 78 A.D.2d 41, 434 N.Y.S.2d 60 (1980). However, there has been no constitutional violation demonstrated in this case. The harshness resulting from the application of a high school athletic association's eligibility rules is not grounds for judicial interference. Id. More importantly, the complaint fails to allege, and the evidence fails to demonstrate, the deprivation by FHSAA of a constitutionally protected right. While FHSAA action is state action for constitutional *1289 purposes, Florida High School Activities Association, Inc. v. Bradshaw, 369 So.2d 398, 401 (Fla. 2d DCA 1979), we find no constitutional violation here. The federal due process clause does not protect against every alleged injury at the hands of the state. See Mitchell v. La. High Sch. Athletic Ass'n, 430 F.2d 1155, 1157-58 (5th Cir.1970). The opportunity to participate in interscholastic athletic activities, standing alone, is not a constitutionally protected right. "If an individual student [Morris] has no constitutionally protected right or privilege to participate in interscholastic sports activities, then it follows that, without more, a school's football team [MCC] as a group has no such constitutionally protected right or privilege." Bradshaw, 369 So.2d at 403.
Unless athletic association regulations deny an athlete a protected fundamental right or classify him or her on a suspect basis, e.g., religion or race, athletic programs are not subject to federal scrutiny. Albach v. Odle, 531 F.2d 983 (10th Cir.1976). We agree with the federal courts that a student's interest in participating in interscholastic sports is a mere expectation, and not a constitutionally protected property right. Walsh v. La. High Sch. Athletic Ass'n, 616 F.2d 152 (5th Cir. 1980); Mitchell.
Neither does Morris's claim merit state constitutional due process protection. Participation in interscholastic high school competitions is not a substantial right unless denial is based on an abuse of a student's fundamental rights or predicated on a suspect basis. Caso, 78 A.D.2d at 46-47, 434 N.Y.S.2d 60. Assuming arguendo, that the right was one meriting state constitutional protection, Morris's claim would still fail. Morris's claimed due process violation was that he was declared ineligible without an opportunity for a hearing. However, section 1006.20, Florida Statutes (2003), and the FHSAA bylaws provide a two-tier appeals process on rulings regarding a student athlete's eligibility to participate in interscholastic activities. FHSAA provides athletes and schools with notice of the allegations against them, an opportunity to respond before an eligibility determination is made, and an appeals process to review all questions of eligibility. Morris chose not to avail himself of this procedure, and, accordingly, he was not denied a forum to have the question of his eligibility reviewed.
Although there are recognized exceptions to the exhaustion doctrine, those narrow exceptions do not appear to be applicable here. The law recognizes that exhaustion of remedies within an association is not required where the proceedings were so irregular that the tribunal acted without jurisdiction, or in excess thereof, or the member has been denied due process or a fair procedure. See 7 C.J.S. Associations § 25a. (1980). Internal remedies need not be exhausted where they are inadequate or nonexistent, or where resort to them would be futile. Id. In addition, parties need not resort to administrative remedies where agency errors are so "egregious or devastating that the promised administrative remedies are too little or too late." Communities Fin. Corp. v. Fla. Dep't of Envtl. Regulation, 416 So.2d 813, 816 (Fla. 1st DCA 1982); see also State ex rel. Dep't of Gen. Servs. v. Willis, 344 So.2d 580, 590 (Fla. 1st DCA 1977).
The trial court determined that "even if the doctrine of administrative remedies were applicable to the Plaintiff[,] the administrative remedies afforded to him were futile." The trial court based its determination that an appeal to the Board of Directors would be futile on the following factual findings:

*1290 a) The only thing that matters to Plaintiff Morris is his ability to play in ten football games.
b) By the time the first hearing was afforded him on September 11, 2003 three football games had been played.
c) The September 11, 2003[sic] was not focused on Morris and this procedure was inappropriate denying him an adequate remedy. This is especially true since the other recruiting violations focused on at the September 11, 2003 hearing were determined by the Defendant to be unfounded.
d) The appeal of the September 11, 2003 hearing to the Board of Directors of the FHSAA was not until September 28, 2003. By this time five football games had been played. Plaintiffs did not pursue this appeal.
e) While Defendant contends that this appeal is still available to the Plaintiffs, this appeal would not be heard until; two weeks after the football season had ended.
f) At the time of the hearing on this matter there were four football games remaining to be played.
g) The court will take judicial notice that it took the Plaintiffs thirty (30) days to get a hearing on their motion for temporary injunction.
The trial court's finding that the administrative remedies afforded to Morris were futile is not supported by competent substantial evidence. Apparently, the trial court based its ruling on time factors, and emphasized that as time progressed, Morris was losing opportunities to play in football games. However, this reasoning fails in light of a review of the actual sequence of events in this case. Morris filed his complaint for injunctive relief in the circuit court on September 16, 2003. The next meeting of the FHSAA Board of Directors, at which Morris was entitled to appeal the decision of the sectional appeals committee, was scheduled on September 28, 2003. The temporary injunction hearing was not held until October 13, 2003, and a final order granting the injunction was issued on October 16, 2003. The injunction hearing, occurring over two weeks after the final appeal would have been heard, actually delayed the process.
Adequate remedies were available to Morris which he simply chose not to pursue. Rather than appealing through the proper channels to the FHSAA Board of Directors, Morris sought injunctive relief in the trial court. Had Morris pursued the administrative remedy made available to him through the Florida Statutes and FHSAA bylaws, the issue may have been resolved as early as September 28, 2003, making the proceeding below, as well as this appeal, unnecessary.[8]
We continue to adhere to the rule that courts should exercise limited interference with the internal affairs and rules of a voluntary membership association:
Under Florida law a court may intervene in the internal affairs of a private association only in exceptional circumstances." It is a well established proposition *1291 in Florida law that ordinarily courts will not intervene in the internal affairs of labor unions or other voluntary associations [.]" Rewolinski v. Fisher, 444 So.2d 54, 58 (Fla. 3d DCA), review denied, 453 So.2d 43 (Fla.1984) (citations omitted). Thus, "the results of internal association processes are subject to judicial reversal only if (1) the association's action adversely affects `substantial property, contract or other economic rights' and the association's own internal procedures were inadequate or unfair, or if (2) the association acted maliciously or in bad faith." Id. (summarizing McCune v. Wilson, 237 So.2d 169 (Fla. 1970)); see also Suit v. Gilbert, 148 Fla. 31, 3 So.2d 729 (1941).

Nat'l Collegiate Athletic Assoc. v. Brinkworth, 680 So.2d 1081, 1084 (Fla. 3d DCA 1996) (footnote omitted). Here, the trial court was clearly sympathetic to the plight of this young athlete and attempted to exercise "equitable" power for Morris's benefit. However, the first principle of equity jurisdiction is that equity follows the law. "`Courts of equity simply have no power to issue rulings which they consider to be in the best interest of justice without regard to established law.'" Fla. High Sch. Activities Ass'n, Inc. v. Adderly, 574 So.2d 158, 159 (Fla. 4th DCA 1990) (quoting Bank of S. Palm Beaches v. Stockton, 473 So.2d 1358, 1361 (Fla. 4th DCA 1985)).
We conclude that the entry of the temporary injunction was error. Accordingly, the trial court's order is reversed and this matter is remanded for further proceedings consistent herewith.
REVERSED AND REMANDED.
PETERSON and PALMER, JJ., concur.
NOTES
[1] 1006.20. Athletics in public K-12 schools

(1) Governing nonprofit organization. The Florida High School Athletic Association is designated as the governing nonprofit organization of athletics in Florida public schools. If the Florida High School Athletic Association fails to meet the provisions of this section, the commissioner shall designate a nonprofit organization to govern athletics with the approval of the State Board of Education. The organization is not to be a state agency as defined in s. 120.52. The organization shall be subject to the provisions of s. 1006.19. A private school that wishes to engage in high school athletic competition with a public high school may become a member of the organization. The bylaws of the organization are to be the rules by which high school athletic programs in its member schools, and the students who participate in them, are governed, unless otherwise specifically provided by statute. For the purposes of this section, "high school" includes grades 6 through 12.
[2] In addition to allegations involving Morris, there were allegations as to ten other students and two coaches.
[3] Section 1006.20(7)(a) provides:

(a) The organization shall establish a procedure of due process which ensures each student the opportunity to appeal an unfavorable ruling with regard to his or her eligibility to compete. The initial appeal shall be made to a committee on appeals within the administrative region in which the student lives. The organization's bylaws shall establish the number, size, and composition of the committee on appeals.
[4] We note that the hearing on MCC and Morris's injunction request occurred October 13, 2003. Their second tier appeal, had they pursued it, would have taken place September 28, 2003, some two weeks earlier.
[5] Section 1006.20(1) states, "The organization [FHSAA] is not to be a state agency as defined ins. 120.52."
[6] Whether such alleged due process violations were substantive or procedural was not specified in the complaint.
[7] The due process clause of the Fourteenth Amendment to the United States Constitution provides in pertinent part: No state shall ... deprive any person of life, liberty, or property, without due process of law.... U.S. Constitution Amendment 14, section 1. The due process provision of the Florida Constitution in relevant part provides: No person shall be deprived of life, liberty or property without due process of law ... Florida Constitution, Article I, section 9.
[8] FHSAA's rules, and its enforcement thereof, and those of similar associations are the source of much litigation. The number of cases illustrate that a substantial number of these cases result in published opinions in the federal and state reporters. The courts of Florida have been reviewing FHSAA rules and decisions for many years, and continue to do so to this day. See, e.g., High Sch. Activities Ass'n, Inc. v. Marsonek, 805 So.2d 868 (Fla. 2d DCA 2001); Fla. High Sch., Activities, Inc. v. Latimer, 750 So.2d 762 (Fla. 3d DCA 2000); Fla. High Sch. Activities Ass'n v. Kartenovich, 749 So.2d 1290 (Fla. 3d DCA 2000); Fla. High Sch. Activities Ass'n, Inc. v. Benitez, 748 So.2d 358 (Fla. 5th DCA 1999).