Agnes, Peter W., J.
Introduction
The plaintiffs, Nicholas DelBuono (hereinafter “Nicholas”) and Kyle Murphy (hereinafter “Kyle”) have sought equitable relief in the form of a temporary restraining order to enjoin the Massachusetts Interscholastic Athletic Association (hereinafter the “MIAA”) from 1) enforcing the disqualification of Nicholas and Kyle from the March 8, 2006 Central Massachusetts semi-final hockey game and any subsequent play-off hockey games in the 2006 season and 2) overrule the disqualification penalty assessed against both Nicholas and Kyle.
Background
A request for a Temporary Restraining Order by definition presents only a very abbreviated version of the facts and from the standpoint of only the party seeking relief. Based on the affidavits filed by the plaintiffs, it appears that on March 6, 2006, Westboro High School hockey players, Nicholas and Kyle, were disqualified from participating in the remainder of the 2006 Central Massachusetts Hockey Tournament. During the quarter-final game against Auburn High School, Nicholas was assessed a penalty for being the “third man in” in a fight and Kyle was assessed a penalty for “spearing” with his hockey stick. Nicholas asserts that there is no evidence that he was the “third man in” in any fight; Kyle asserts that there is no evidence that he “speared” anyone. In brief, the plaintiffs indicate that an MIAA official who ordinarily would be available on scene to entertain appeals from rulings such as the ones in this case was absent from the rink at the time of the events in question.
It is alleged in the complaint that “Nicholas and Kyle are being deprived of the opportunity of participating in what may be their team’s last play-off game of the year” due to the incorrect penalties and unwarranted disqualifications; that in enjoining the MIAA’s decision, the status quo would be maintained; and, that Nicholas and Kyle have a substantial likelihood of success on the merits because once the MIAA reviews a DVD recorded during the Westboro-Aubum game, it will be clear that the disqualifications were improperly assessed.
During an ex parte hearing on the matter, Donald C. Keavany, Jr. — the attorney for Nicholas and Kyle— explained to the court that Nicholas’s father attempted to resolve the matter with the MIAA on March 7th and that no one responded to him. On March 8th, Nicholas’s father went to Attorney Keavany for assistance. Attorney Keavany attempted, to no avail, to speak with an authority at the MIAA. Attorney Keavany informed the MIAA of Nicholas’s and Kyle’s intention to file an ex parte motion in the hopes of enjoining the MIAA’s decision of March 6th. Attorney Keavany faxed the papers regarding the request for a temporary restraining order to counsel for the MIAA. Despite Attorney Keavany’s efforts to put the MIAA on notice, it did not appear for the hearing. Attorney Keavany, in addition to the papers filed for the temporary restraining order, presented the court with a DVD recording of the Westboro-Auburn game of March 6th.
Discussion
In determining whether a temporary restraining order should issue, this court must evaluate: 1) whether a substantial threat exists that the moving parly will suffer irreparable harm if the injunction is not granted; 2) whether the threatened injury to the moving party outweighs the threatened harm to the opposing party if the injunction is granted; and 3) whether there is a substantial likelihood that the moving party will succeed on the merits. Planned Parenthood League v. Operation Rescue, 406 Mass. 701, 710 (1990); Packing Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-18 (1980).
In our society, high school sports have grown in popularity to become one of the major activities in the lives of young people and their families. High school sports, whether at the varsity or intramural level, offer young people an opportunity to compete with their peers in an environment in which important lessons may be learned including the value of hard work, preparation, discipline, and teamwork. High school sports also provide an opportunity for a smaller number of young people to distinguish themselves from their peers in terms of athletic prowess such that they become sought after by college sports programs and qualify for generous financial assistance to defray the growing costs of higher education. And all those who play high school sports are given an opportunity to strengthen their bodies and their minds in ways that may benefit them for years to come whether or not they continue to participate in sports activities.
Despite the importance of high school sports, there are several reasons why relief is not available in this case.
First, Nicholas and Kyle will not suffer irreparable harm in the absence of a TRO. The complaint alleges that Nicholas and Kyle are being denied the chance to play in their team’s last play-off game of the year. Nowhere does the complaint indicate that this denial will have a further effect than that alleged. No scholarships will be lost; no future college play will be forfeited; no more than the lost opportunity to finish out the season will be realized. The plaintiffs’ case is not based on the denial of any constitutional right for there is no such right to participate in high school athletics. See Mitchell v. Louisiana High School Athletic Ass’n, 430 F.2d 1155 (5th Cir. 1970); Caso v. New York State Public High School Athletics Ass’n, 78 A.D.2d 41, 46-47, 434 N.Y.S.2d 60 (1980). There is no allegation here that the plaintiffs’ children have been excluded from participation in sports programs due to their race, religion, background or beliefs. Because this is *742 not a case where irreparable harm has been shown, this court may not issue a temporary restraining.
Second, this court is not persuaded that, when balancing the harms, the scales tip in the favor of Nicholas and Kyle. The complaint alleges that in enjoining the MIAA’s decision, the status quo would be maintained. This assertion overlooks the fact that Nicholas and Kyle were penalized for not playing by the rules on the basis of a judgment made by a duly authorized sports official who was present and made observations that led him to impose the disqualification penalty. On the other hand, the intervention of this court at this stage may seriously impair the integrity of the defendant’s system for ensuring compliance with the rules of the various sports that it administers and oversees.
This court is aware of the fact that human error may contribute to a disputed decision, especially with respect to organized sports. However, this court is not in any position to review the penalty assessment decisions made by the referees at the time those decisions were made. The Superior Court is not the arena for contesting “bad calls.” There are no established standards for this court to follow in reviewing a videotape of a sports program to enable it to correct the judgment of an official. If this court were to entertain lawsuits from high school-age students grounded on disagreements over decisions made by referees during sports contests, the floodgates would open to a new wave of litigation that might severely damage the ability of schools to maintain competitive sports programs. “An injunction may issue properly only if the judge concludes that the risk of irreparable harm to a plaintiff, in light of his chances of success on his claim, outweigh(s) the defendant’s probable harm and likelihood of prevailing on the merits of the case.” Commonwealth v. Mass. CRINC, 392 Mass. 79, 87-88 (1984). It is inappropriate for this court to review the penalty assessment and to risk a flood of litigation by parents who allege their children were the unfortunate victims of human error when no showing is made as to the injury suffered above and beyond the punishment itself.
Lastly, this court, for the reasons set forth above, does not foresee a substantial likelihood of success on the merits. Nicholas and Kyle asked the MIAA on March 7th to reconsider. The MIAA did not respond to them. Nicholas and Kyle now ask this court to review and assess the correctness of the referees’ decisions made regarding Nicholas and Kyle. The law does not provide a remedy for every wrong that a person may suffer. See, e.g., Meehan v. Shaughnessy; Cohen, 404 Mass. 419, 449 (1989) (“We have noted that the dissolution of a partnership at will, however unseemly in manner and method, is not a legal wrong”) (citation omitted); Hurwitz v. Bocain, 41 Mass.App.Ct. 365, 370 (1996) (“A mere refusal to perform an oral promise within the Statute of Frauds, standing by itself, is not an actionable fraud”) (citation omitted). This court will not. While it is all but assured that Nicholas and Kyle will be forever disappointed in both the disqualification from playing and this court’s refusal to enjoin such, there is a valuable lesson to be learned. Playing by the rules in a high school athletic contest sometimes means accepting the unfortunate consequences of a referee’s judgment or decision that most people might agree was wrong.
ORDER
For the foregoing reasons, the plaintiffs’ request for a temporary restraining order is DENIED.